**KIRKLAND & ELLIS LLP**
Jay P. Lefkowitz, P.C.
Joseph Serino, Jr.
Laura B. Kadetsky
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jay.lefkowitz@kirkland.com
joseph.serino@kirkland.com
laura.kadetsky@kirkland.com

*Attorneys for Defendant Herald Fund SPC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>BERNARD L. MADOFF INVESTMENT SECURITIES LLC,<br><br>        Debtor. | ) <br> ) <br> )   Adv. Pro. No. 08-01789 (BRL) <br> ) <br> )   SIPA LIQUIDATION <br> ) <br> )   (Substantively Consolidated) <br> ) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC,<br><br>        Plaintiff,<br><br>        v.<br><br>HERALD FUND SPC<br><br>        and<br><br>HSBC BANK PLC<br><br>        and<br><br>HSBC SECURITIES SERVICES (LUXEMBOURG) S.A.,<br><br>        Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> )   Adv. Pro. No. 09-01359 (BRL) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## MEMORANDUM OF LAW IN SUPPORT OF HERALD FUND SPC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

BACKGROUND ..................................................................................5

ARGUMENT .......................................................................................7

I.   THE TRUSTEE CANNOT STATE AN AVOIDANCE CLAIM UNDER
     THE BANKRUPTCY CODE BECAUSE HE DOES NOT ALLEGE
     ADEQUATELY A TRANSFER OF AN "INTEREST OF THE DEBTOR IN
     PROPERTY" (COUNTS 2 AND 3)..............................................................8

II.  THE TRUSTEE MAY NOT RECOVER TRANSFERS IN CONNECTION
     WITH A SECURITIES CONTRACT (COUNT 2). ................................11

III. THE TRUSTEE'S ALLEGATIONS OF ACTUAL FRAUDULENT INTENT
     ARE INADEQUATE (COUNT 4)...................................................13

IV.  THE TRUSTEE CANNOT STATE A CLAIM FOR TURNOVER AND
     ACCOUNTING WHEN THE SUBJECT PROPERTY IS IN DISPUTE
     (COUNT 1). .........................................................................16

V.   THE TRUSTEE PRESENTS NO ADEQUATE BASIS FOR AN
     OBJECTION TO HERALD FUND'S SIPA CLAIM (COUNT 10). ...........18

VI.  THE TRUSTEE CANNOT RECOVER ANY TAX PAYMENTS MADE TO
     ANY TAX AUTHORITY ON HERALD FUND'S BEHALF....................19
     A.  Any Taxes Withheld By BLMIS and Paid to Governmental Tax
         Authorities Were Held in Trust for Those Authorities and Do Not
         Constitute Property of the Estate. ........................................20
     B.  The Tax Payments Made in the Ninety Days Prior to the Filing Date Were
         Not Transfers on Account of an Antecedent Debt Owed by the Debtor. .............21

VII. THE TRUSTEE IS NOT ENTITLED TO A CONSTRUCTIVE TRUST OR
     ASSIGNMENT OF HERALD FUND'S TAX REFUNDS. ......................23
     A.  The Trustee is Not Entitled to a Constructive Trust. ...................23
     B.  The Trustee Is Not Entitled to An Assignment of Herald Fund's Tax
         Refunds. ....................................................................24

CONCLUSION ...............................................................................26

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
129 S.Ct. 1937 (2009) ................................................................................................ passim

*Bankers Sec. Life Ins. Soc'y v. Shakerdge,* 49 N.Y.2d 939, 940 (N.Y. 1980) ............................. 23

*Begier v. IRS,*
496 U.S. 53 (1990) ..................................................................................................... passim

*Bell Atl. Corp. v. Twombly,*
550 U.S. 544 (2007) ............................................................................................. 7, 8, 18

*Contemporary Indus. Corp. v. Frost,*
564 F.3d 981 (8th Cir. 2009) ............................................................................................ 11

*Coregis Ins. Co. v. Am. Health Foundation, Inc.,*
241 F.3d 123 (2d Cir. 2001) ............................................................................................. 12

*Cortec Indus., Inc. v. Sum Holding L.P.,*
949 F.2d 42 (2d Cir. 1991) ................................................................................................. 9

*Crowthers McCall Pattern, Inc. v. Lewis,*
129 B.R. 992 (S.D.N.Y. 1991) .......................................................................................... 14

*FDIC v. Marke Painting Co.,*
No. 88 Civ. 8675, 1992 WL 212372 (S.D.N.Y. Aug. 26, 1992) ....................................... 23

*HBE Leasing Corp. v. Frank,*
61 F.3d 1054 (2d Cir. 1995) ............................................................................................. 14

*In re 1634 Assocs.,*
157 B.R. 231 (Bankr. S.D.N.Y. 1993) .............................................................................. 22

*In re Actrade Fin. Techs. Ltd.,*
337 B.R. 791 (Bankr. S.D.N.Y. 2005) (discussing cases) ................................................. 14

*In re Andrew Velez Constr., Inc.,*
373 B.R. 262 (Bankr. S.D.N.Y. 2007) ....................................................................... 13, 14

*In re Centennial Textiles, Inc.,*
220 B.R. 165 (Bankr. S.D.N.Y. 1998) .............................................................................. 24

*In re Chase & Sanborn Corp.,*
124 B.R. 368 (Bankr. S.D. Fla. 1991) .............................................................................. 19

Page(s)

*In re Colonial Realty Co.,*
    980 F.2d 125 (2d Cir. 1992).................................................................................... 17

*In re CRS Steam,*
    225 B.R. 833 (Bankr. D. Mass. 1998) ..................................................................... 9

*In re E&S Comfort, Inc.,*
    92 B.R. 616 (Bankr. E.D. Pa. 1988) ..................................................................... 21

*In re Enron Corp.,*
    325 B.R. 671 (Bankr. S.D.N.Y. 2005) ................................................................... 12

*In re Estate of Partos,*
    611 N.Y.S.2d 30 (N.Y. App. Div. 1994) ............................................................... 24

*In re Fin. Mgmt. Scis., Inc.,*
    261 B.R. 150 (Bankr. W.D.Pa. 2001) .................................................................... 12

*In re Koreag, Controle et Revision S.A.,*
    961 F.2d 341 (2d Cir. 1992)..................................................................................... 8

*In re Le Café Crème, Ltd.,*
    244 B.R. 221 (Bankr. S.D.N.Y. 2000) ................................................................... 14

*In re Manhattan Investment Fund Ltd.,*
    310 B.R. 500 (Bankr. S.D.N.Y. 2002) ................................................................... 14

*In re Marketxt Holdings Corp.,*
    361 B.R. 369 (Bankr. S.D.N.Y. 2007) ............................................................. 13, 14

*In re Park South Secs., LLC,*
    326 B.R. 505 (Bankr. S.D.N.Y. 2005) ........................................................ 13, 14, 15

*In re QSI Holdings, Inc.,*
    No. 08-1176, 2009 WL 1905237 (6th Cir. July 6, 2009)....................................... 11

*In re Refco, Inc. Sec. Litig.,*
    503 F. Supp. 2d 611 (S.D.N.Y. 2007)..................................................................... 7

*In re Sharp Int'l Corp.,*
    403 F.3d 43 (2d Cir. 2005)..................................................................................... 14

*In re Sickels,*
    392 B.R. 423 (Bankr. N.D. Iowa 2008) ................................................................. 24

*In re Student Fin. Corp.,*
    335 B.R. 539 (D. Del. 2005) .................................................................................. 17

# <u>TABLE OF AUTHORITIES (cont'd)</u>

Page(s)

*In re Teligent, Inc.*,
    325 B.R. 134 (Bankr. S.D.N.Y. 2005) ............................................................. 17

*In re Wellington Foods, Inc.*,
    165 B.R. 719 (Bankr. S.D. Ga. 1994) ............................................................. 20

*McCullough v. Roots & Coe*,
    60 U.S. 349 (1856) .......................................................................................... 8

*Papasan v. Allain*,
    478 U.S. 265 (1986) ................................................................................... 7, 18

*Pfohl Bros. Landfill Steering Comm. v. Allied Waste Sys., Inc.*,
    255 F. Supp. 2d 134 (W.D.N.Y. 2003) ........................................................ 23

*Russello v. United States*,
    464 U.S. 16 (1983) ........................................................................................ 13

*Sazerac Co., Inc. v. Falk*,
    861 F. Supp. 253 (S.D.N.Y. 1994) ................................................................ 9

*Secs. Investor Protection Corp. v. Stratton Oakmont, Inc.*,
    234 B.R. 293 (Bankr. S.D.N.Y. 1999) ......................................................... 14

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d Cir. 2002) ........................................................................... 7

*South Cherry Street, LLC v. Hennessee Group LLC*,
    573 F.3d 98 (2d Cir. 2009) ............................................................................. 8

*U.S. v. Gayle*,
    342 F.3d 89 (2d Cir. 2003) ........................................................................... 12

*United States v. Pullman Const. Indus., Inc.*,
    210 B.R. 302 (N.D. Ill. 1997) ...................................................................... 21

*United States v. Wong Kim Bo*,
    472 F.2d 720 (5th Cir. 1972) ........................................................................ 13

**Statutes**

11 U.S.C. § 101(22) ................................................................................................ 19

11 U.S.C. § 1107 ...................................................................................................... 8

11 U.S.C. § 502(d) ................................................................................................. 30

11 U.S.C. § 541 ......................................................................................... 16, 31, 36

# TABLE OF AUTHORITIES (cont'd)

Page(s)

11 U.S.C. § 542 .................................................................................................... 8, 28

11 U.S.C. § 544 .......................................................................................................... 8

11 U.S.C. § 546(e) .............................................................................................. 18, 20

11 U.S.C. § 547 ................................................................................................... passim

11 U.S.C. § 548 ................................................................................................... passim

11 U.S.C. § 550 .......................................................................................... 8, 34, 35, 36

11 U.S.C. § 551 .......................................................................................................... 8

11 U.S.C. § 741(7)(A) ......................................................................................... 18, 19

15 U.S.C. § 78fff ................................................................................................. 27, 34

15 U.S.C. § 78*lll*(11) ........................................................................................... 14, 15

26 U.S.C. § 7501(a) ................................................................................................... 31

N.Y. C.P.L.R. § 203(g) ........................................................................................ 8, 25

N.Y. C.P.L.R. § 213(8) ............................................................................................ 25

N.Y. D.C.L. § 272 ..................................................................................................... 10

N.Y. D.C.L. § 273 ........................................................................................... 8, 10, 15

N.Y. D.C.L. § 274 ........................................................................................... 8, 10, 15

N.Y. D.C.L. § 275 ........................................................................................... 8, 10, 15

N.Y. D.C.L. § 276 ................................................................................................. 8, 21

N.Y. D.C.L. § 278 ............................................................................................... 8, 34

N.Y. D.C.L. § 279 ....................................................................................................... 8

U.S. Const. art. III, § 2 .............................................................................................. 24

By now, the whole world is familiar with the massive Ponzi scheme operated by Bernard L. Madoff over decades through his business, Bernard L. Madoff Investment Securities LLC ("BLMIS"). The numbers are stark: according to account statements, when Madoff confessed to the fraud in December 2008, his clients had approximately $65 billion invested with BLMIS. This amounted to the largest Ponzi scheme yet uncovered. The Trustee managing the BLMIS estate is effectively charged with cleaning up this mess — a striking understatement — and attempting to make defrauded investors as whole as possible by "clawing back" money withdrawn from BLMIS over the years and distributing it to clients.

Yet the Trustee has now overstepped his bounds. Rather than seeking to recover withdrawals made by investors who enjoyed enormous returns over the years, the Trustee now seeks to recover transfers made from BLMIS for the benefit of Herald Fund SPC ("Herald Fund"), a foreign fund whose own clients' assets were invested with BLMIS. Yet Herald Fund, unlike other investors, received no return of false profits from BLMIS. Rather, *the account opened at BLMIS for Herald Fund lost almost $1 billion* in Madoff's scheme. The Trustee acknowledges this massive loss, conceding that, while approximately $1.5 billion was deposited in the account that HSBC Securities Services (Luxembourg) S.A. ("HSBC (Luxembourg)") opened for Herald Fund at BLMIS (the "Herald Fund Account"), only approximately $500 million of those deposits were withdrawn over the four and a half years that the account was open. Yet he still seeks to recover even the approximately $500 million that Herald Fund managed to save over time and that partially offsets its investors' losses. This Court should not condone the further victimization of Herald Fund by allowing the Trustee to claw back such transfers from, quite possibly, one of the most significant "net losers" in Madoff's rampant Ponzi scheme.

Notably, this is not a situation where the Trustee seeks to recover from an entity that was complicit in or somehow knew of the Ponzi scheme. Although the Trustee cites cookie-cutter allegations that he believes somehow indicate such knowledge or complicity, those allegations are illogical, internally contradictory, or in no way tie back to Herald Fund. The reality is that virtually no one who came in contact with Madoff recognized him for what he was — a crook past all conceiving — until he publicly admitted his fraud. Herald Fund, who was yet another duped investor, should not have to pay yet again for Madoff's duplicity against the entire world.

In particular, the Trustee's claims against Herald Fund should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6), as incorporated by Federal Rule of Bankruptcy Procedure 7012, for a variety of reasons. *First*, the Trustee fails to state an avoidance claim under either Section 547(b) or Section 548(a) of the Bankruptcy Code, because he has not adequately alleged a transfer of an "interest of the debtor in property." Rather, this case is unique and different from the norm because the controlling account documents here, as incorporated into the allegations on this motion to dismiss, clearly indicate that BLMIS held the property solely as a bailee. As a bailee, BLMIS never acquired title to the property itself. Thus, the return of some of Herald Fund's property did not amount to a transfer of an interest of the debtor in property, and the basic elements of a preference or fraudulent conveyance are absent. Although the Trustee baldly states that the subject transfers were of "an interest of BLMIS in property," the Supreme Court recently made quite clear that such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

*Second*, the Trustee also may not recover purported preferential transfers from Herald Fund, because any such transfers were made "in connection with a securities contract" and thus

are barred from recovery under Section 546(e) of the Bankruptcy Code. That provision, as amended in 2006, bars a bankruptcy trustee from using Section 547(b) to recover transfers made to a financial institution in connection with a securities contract. Here, the Trustee alleges the existence of a contract authorizing the buying and selling of securities, that execution of that contract opened the Herald Fund Account, and that transfers out of the Herald Fund Account were made by wire to a banking institution. Therefore, the transfers the Trustee seeks to avoid fall well within the safe harbor created by the plain language of the amended statute, and the Trustee may not recover them as preferences.

*Third*, the Trustee's claims for actual fraudulent conveyances under Section 276 of the DCL fail because he has not sufficiently alleged that Herald Fund had any "actual intent … to hinder, delay, or defraud" creditors of BLMIS. New York law, unlike the Bankruptcy Code, requires proof of both the transferor's **and** the transferee's fraudulent intent. The New York courts further require at least some allegations of "badges of fraud" to indicate that such fraudulent intent existed. Here, the Trustee has done no more than regurgitate, on mere information and belief, the same allegations of so-called "indicia of irregularity and fraud" that he has made in other adversary actions. He alleges no direct evidence of any actual fraudulent intent on the part of Herald Fund. Nor do his allegations of circumstantial evidence constitute the "badges of fraud" considered sufficient by New York courts. Finally, his allegations are inherently illogical, because, if Herald Fund actually intended to hinder, delay, or defraud BLMIS's creditors, it would have withdrawn the entirety of the money invested in its account, rather than losing almost $1 billion of it.

*Fourth*, the Trustee's claim for turnover and accounting pursuant to Section 542 must fail, as it applies to the very same property that he seeks to recover in this action. The Trustee

may not circumvent the requirements of Sections 544, 547, or 548 of the Code by relying solely on his powers under Section 542. Instead, to be entitled to turnover and accounting, he must first prove each and every one of the elements of a preference or fraudulent conveyance. Clearly, he has not yet done so, or the rest of this lawsuit would be moot. The claim for turnover and accounting should thus be dismissed.

*Fifth*, the Trustee's objection to Herald Fund's SIPA claim must similarly be denied, as he has not yet proven that any transfer for the benefit of Herald Fund may be avoided. To invoke Section 502(d) of the Bankruptcy Code, there must be a judicial determination that a creditor received an avoidable transfer. By definition, this avoidance action means that there is no such judicial determination, and thus Section 502(d) is inapplicable. Further, the Trustee's conclusory allegation that Herald Fund's SIPA claim is not supported by the relevant materials lacks the requisite factual allegations to proceed and indeed is contradicted by the Trustee's own apparent reliance on those same books and records.

*Sixth*, Herald Fund is not liable for any transfers made from its BLMIS account for tax payments to governmental taxing authorities. The Supreme Court has clearly held that, from the moment funds for tax payments are withheld, a trust for the benefit of the taxing authority is present, and the property is not that of the debtor. BLMIS's tax payments from Herald Fund's account were therefore held in trust for the relevant government entities, and their payment cannot have been a transfer of "an interest of the debtor in property." Without that crucial element, the Trustee cannot recover such tax payments as either preferences or fraudulent conveyances. Tax payments made within the ninety days prior to the filing of this liquidation also may not be recovered as preferences because they were not made "on account of an antecedent debt owed by the debtor" as required by Section 547(b). Bankruptcy courts clearly

hold, in line with Section 547(a)(4), that no antecedent debt is created with regard to tax payments until the date a debtor is exposed to penalties for non-payment of taxes. The Trustee has not alleged that any such date had passed, and therefore he cannot allege a necessary element for avoidance of a preference. Nor was any purported debt owed by BLMIS; rather, the Trustee alleges that the tax payments were made for Herald Fund's benefit, and he thereby negates another element of his claim.

*Finally*, the Trustee does not and cannot point to any authority that would allow him the remedy of a constructive trust over the proceeds of transfers made for the benefit of Herald Fund. Nor does he allege the elements of a constructive trust under New York law, because he does not and cannot allege that Herald Fund was unjustly enriched. Indeed, the Trustee explicitly alleges that Herald Fund lost nearly $1 billion through the Herald Fund Account — quite the opposite of being unjustly enriched. Further, the Trustee has alleged no basis for an assignment to him of Herald Fund's potential future tax refunds. Any such refunds were not property transferred out of the BLMIS estate. Nor has the Trustee alleged that Herald Fund is unable to satisfy any liability here, if any liability is ever established, such that he would need an assignment of tax refunds to collect on any future judgment.

For these reasons, and as further discussed below, the Trustee's claims for relief against Herald Fund should be dismissed.

## **BACKGROUND**

Herald Fund is an exempted segregated portfolio company (or investment fund) incorporated in the Cayman Islands. (Second Amended Complaint ("SAC") ¶ 25.) Herald Fund, through its segregated portfolio Herald USA Segregated Portfolio One, became a client of BLMIS's investment advisory business in 2004 and maintained the Herald Fund Account

through its custodian, HSBC (Luxembourg). (*Id.* ¶¶ 29, 31.) HSBC (Luxembourg) and HSBC Bank PLC ("HSBC") are both banking institutions. (*Id.* ¶¶ 26-27.)

By virtue of the Herald Fund Account at BLMIS, various form contracts were entered into on Herald Fund's behalf with BLMIS. These included a Customer Agreement, an Option Agreement, and a Trading Authorization Limited to Purchases and Sales of Securities and Options ("Trading Authorization"). (*Id.* ¶ 29.) HSBC (Luxembourg) also entered a Sub-Custody Agreement with BLMIS in 2004 whereby BLMIS acted as the sub-custodian for certain funds for which HSBC (Luxembourg) acted as the custodian, including Herald Fund. (*Id.* ¶ 28.) BLMIS held "these funds" for the benefit of HSBC (Luxembourg). (*Id.* ¶ 28.)

During the four and a half years between the opening of the Herald Fund Account and Madoff's confession to operating a Ponzi scheme, HSBC and HSBC Luxembourg invested $1,533,741,975.00 with BLMIS on behalf of Herald Fund. (*Id.* ¶ 31.) BLMIS wired $567,800,000.00 to HSBC "for the benefit of Herald Fund" during that same time period. The Herald Fund Account thus ***lost almost $1 billion with BLMIS in less than five years***. (*Id.* ¶¶ 33-35.) BLMIS also withdrew money from the Herald Fund Account on 532 occasions to make tax payments to "appropriate tax authorities"; these tax payments totaled $10,233,846.00 (the "Tax Payments"). (*Id.* ¶¶ 33-35.) Specifically, the Trustee alleges that BLMIS (1) wired $536,000,000.00 to HSBC and made tax payments totaling $1,487,933.00 from the Herald Fund Account for the benefit of Herald Fund during the 90 days prior to the liquidation of BLMIS (the "90-Day Transfers"), (2) wired an additional $20,000,000.00 to HSBC and made tax payments totaling an additional $5,823,339.00 for the benefit of Herald Fund in the remainder of the two years prior to the liquidation of BLMIS (cumulatively, the "Two-Year Transfers"), and (3) wired an additional $11,800,000.00 to HSBC and made tax payments totaling an additional

$2,922,574.00 for the benefit of Herald Fund in the remainder of the six years prior to the liquidation of BLMIS (cumulatively, the "Six-Year Transfers"). (*Id.* ¶¶ 33-35.)

By this time, recitation of the facts surrounding Madoff's massive fraud is essentially unnecessary. As most of the world now knows, Madoff admitted to having operated a Ponzi scheme for years, pled guilty to an 11-count criminal indictment, and was sentenced to 150 years imprisonment. (*Id.* ¶ 11.) Madoff was arrested by federal agents on December 11, 2008 (the "Filing Date"), and, on that same date, the Securities and Exchange Commission commenced an action against both Madoff and BLMIS in federal district court in Manhattan. (*Id.* ¶ 6.)

The Trustee now brings five claims for relief against Herald Fund: (1) turnover and accounting, 11 U.S.C. § 542; (2) preferential transfer, 11 U.S.C. §§ 547(b), 550, & 551; (3) actual fraudulent transfer, 11 U.S.C. §§ 548(a)(1)(A), 550, & 551; (4) actual fraudulent transfer, N.Y. D.C.L. §§ 276, 276-a, 278, & 279, 11 U.S.C. §§ 544, 550(a), & 551; and (5) objection to Securities Investor Protection Act ("SIPA") claim.[1] The Trustee's claims should be dismissed.

## ARGUMENT

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable here by Federal Rule of Bankruptcy Procedure 7012, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court, however, need not "accept as true a legal conclusion couched as a factual allegation." *Papasan*

---

[1] In filing the Second Amended Complaint, the Trustee voluntarily withdrew five claims that were asserted against Herald Fund in the First Amended Complaint: (1) constructive fraudulent transfer, 11 U.S.C. §§ 548(a)(1)(B), 550, & 551; (2) constructive fraudulent transfer, N.Y. D.C.L. §§ 273, 278, & 279, 11 U.S.C. §§ 544, 550(a), 551, & 1107; (3) constructive fraudulent transfer, N.Y. D.C.L. §§ 274, 278, & 279, 11 U.S.C. §§ 544, 550(a), 551, & 1107; (4) constructive fraudulent transfer, N.Y. D.C.L. §§ 275, 278, & 279, 11 U.S.C. §§ 544, 550(a), & 551; and (5) "undiscovered" fraudulent transfer, N.Y. C.P.L.R. § 203(g), N.Y. D.C.L. §§ 276, 276-a, 278, & 279, 11 U.S.C. §§ 544, 550(a), & 551.

*v. Allain*, 478 U.S. 265, 286 (1986); *see also Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 630 (S.D.N.Y. 2007) (quoting *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002)) (court need not accept allegations that are merely "[c]onclusory" or "legal conclusions masquerading as factual conclusions"). Thus, a plaintiff must plead more than a "formulaic recitation of the elements of a cause of action," and the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *South Cherry Street, LLC v. Hennessee Group LLC*, 573 F.3d 98, 104 (2d Cir. 2009). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 129 S.Ct. at 1949 (internal quotations omitted). The Trustee's claims fail to meet this standard and must be dismissed.

## I. THE TRUSTEE CANNOT STATE AN AVOIDANCE CLAIM UNDER THE BANKRUPTCY CODE BECAUSE HE DOES NOT ALLEGE ADEQUATELY A TRANSFER OF AN "INTEREST OF THE DEBTOR IN PROPERTY" (COUNTS 2 AND 3).

The Trustee fails to state a claim for recovery of preferential transfers or fraudulent conveyances under the Bankruptcy Code, because he cannot allege that the 90-Day or Two-Year Transfers were transfers of an interest of BLMIS in property. An essential element of both types of transfer is that it be a "transfer of an interest of the debtor in property." 11 U.S.C. §§ 547(b) & 548(a); *Begier v. IRS*, 496 U.S. 53, 58 (1990) (affirming holding that transfer was not an avoidable preference).

Property held by a debtor as a bailee remains the property of the bailor and not that of the debtor-bailee. *See McCullough v. Roots & Coe*, 60 U.S. 349, 354 (1856) (stating that a "bailee ... is estopped to deny [bailor's] title in any form"); *see also In re Koreag, Controle et Revision*

*S.A.*, 961 F.2d 341, 352 (2d Cir. 1992) ("[W]hile the outer boundaries of the bankruptcy estate may be uncertain, Congress plainly excluded property of others held by the debtor in trust at the time of the filing of the petition.") (internal citations and quotations omitted); 5 COLLIER ON BANKRUPTCY 541.06[1][a] ("Consequently, it has been settled under the Code and prior law that absent state statutory enactment to the contrary, if property was in a debtor's hands as bailee or agent, the debtor's estate holds only the same interest, and the bailor or principal could recover the property or its proceeds."). Indeed, the very definition of a "bailment" indicates that only possession, not title, transfers to the bailee. *See* BLACK'S LAW DICTIONARY (8th ed. 2004) (defining "bailment" as a "delivery of personal property by one person (the bailor) to another (the bailee) who holds the property for a certain purpose under an express or implied-in-fact contract. Unlike a sale or gift of personal property, a bailment involves a change in possession but not in title."). Thus, a bankruptcy trustee cannot use Sections 547(b) or 548(a) to avoid a return of a bailment to its rightful owner. *See In re CRS Steam*, 225 B.R. 833, 844 (Bankr. D. Mass. 1998) (legislative history of 11 U.S.C. § 541 evinces congressional intent that bailment or intended trust should be excluded from property of estate); *see also Begier*, 496 U.S. at 59 (holding that bankruptcy trustee may not avoid as preferences transfers of funds that were held only in trust by debtor).

Here, BLMIS held property of Herald Fund as a bailee, and thus the 90-Day and Two-Year Transfers were not transfers of property of BLMIS. The agreements purportedly governing the Herald Fund Account make this quite clear.[2] First, the Customer Agreement dictates that the

---

[2] On this motion to dismiss pursuant to Rule 12(b)(6) and Rule 7012, the Court may consider documents referenced in and integral to the plaintiff's complaint although the documents are not attached to the complaint. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (stating that, on a Rule 12(b)(6) motion to dismiss, a complaint is "deemed to include any ... documents incorporated in it by reference"); *cf. Sazerac Co., Inc. v. Falk*, 861 F. Supp. 253, 257 (S.D.N.Y. 1994) ("In the event that a plaintiff alleges a claim based on a written instrument ... the court may consider such an instrument in ruling on a Rule 12(b)(6) motion even if it was not attached to the complaint and made a part thereof under Rule 10(c))."). Here, the Trustee

Customer always had the right to return of its invested assets upon appropriate demand: "Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker [BLMIS], the Customer is entitled to receive physical delivery of fully paid securities in the Customer's Account." (*See* Decl. of Laura B. Kadetsky in Supp. of Herald Fund SPC's Mot. to Dismiss the Second Amended Complaint ("Kadetsky Decl.") Ex. A at ¶ 5.) Second, the Customer Agreement confirms that BLMIS is "acting as the Customer's agent," (*see* Kadetsky Decl. Ex. A at ¶ 7), which relationship is functionally similar to a bailor-bailee relationship in that title to the property remains with the bailor or principal. *See* 5 COLLIER ON BANKRUPTCY 541.06[1][a].

These facts define the relationship between Herald Fund through HSBC (Luxembourg) and BLMIS for purposes of this Rule 7012 motion. On that basis, the Trustee alleges merely a bailor-bailee relationship between BLMIS and Herald Fund, such that title to the transferred property always remained with Herald Fund and not with BLMIS. The Court should disregard the Trustee's allegations to the contrary, as they are merely conclusory and contradict the objective documentary evidence concerning the relationship. *See Iqbal*, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Sazerac*, 861 F. Supp. at 257 ("Additionally, if the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the

---

explicitly references the Customer Agreement, which controlled the purported terms of the Herald Fund Account, and he apparently uses it in part to assert jurisdiction over Herald Fund. (SAC ¶¶ 29-30.) The Court thus may and should consider this agreement on this motion.

complaint."). Accordingly, the Trustee cannot recover the 90-Day Transfers as preferences or the Two-Year Transfers as fraudulent conveyances under the Bankruptcy Code.

## II. THE TRUSTEE MAY NOT RECOVER TRANSFERS IN CONNECTION WITH A SECURITIES CONTRACT (COUNT 2).

Even if the allegations were sufficient to state a claim for preferential transfers — which they are not — Section 546(e) of the Bankruptcy Code would still bar these claims. Section 546(e), as amended in 2006, prohibits the Trustee from avoiding as preferences any transfer made to a bank in connection with a securities contract: "Notwithstanding section[] ... 547 ... the trustee may not avoid a transfer that is ... a transfer made by or to (or for the benefit of) a ... financial institution ... *in connection with a securities contract*, as defined in section 741(7)...." 11 U.S.C. § 546(e) (emphasis added). Section 741(7), as amended in 2005, defines a "securities contract" as, *inter alia*, "(i) a contract for the purchase, sale, or loan of a security" and "(x) a master agreement that provides for an agreement or transaction referred to in clause (i)...." 11 U.S.C. § 741(7)(A). The Code defines a "financial institution" as "a Federal Reserve bank or an entity that is a commercial or savings bank, industrial savings bank, savings and loan association, trust company, federally-insured credit union, or receiver, liquidating agent, or conservator for such entity...." 11 U.S.C. § 101(22); *see also Contemporary Indus. Corp. v. Frost*, 564 F.3d 981, 987 (8th Cir. 2009) (stating that a "bank" is a "financial institution" for purposes of Section 546(e)).

The transfers the Trustee seeks to avoid fall precisely within this safe harbor. Specifically, the Trustee alleges that BLMIS wired funds from BLMIS's bank account "to HSBC," which, as a "banking institution," must be a financial institution. (SAC ¶¶ 26-27, 33-35.) *See* 11 U.S.C. § 101(22); *see also In re QSI Holdings, Inc.*, No. 08-1176, 2009 WL 1905237, at *5 (6th Cir. July 6, 2009) (financial institution need not acquire beneficial interest in

transferred funds to satisfy requirement of Section 546(e) that transfer be made to financial institution); *Contemporary Indus. Corp.*, 564 F.3d at 987 (same). The Trustee further alleges that the Trading Authorization was executed in relation to the Herald Fund Account at BLMIS.[3] (SAC ¶ 29.) In authorizing Madoff to "buy, sell and trade in stocks, bonds, options and any other securities," the Trading Authorization provides for an agreement for the "purchase, sale, or loan of a security," thereby coming within the plain language of the definition of "securities contract." (Kadetsky Decl. Ex. A.) 11 U.S.C. § 741(7)(A); *see also U.S. v. Gayle*, 342 F.3d 89, 92 (2d Cir. 2003) ("Statutory construction begins with the plain text and, if that text is unambiguous, it usually ends there as well."). Finally, the Trading Authorization apparently triggered the opening of the Herald Fund Account and thus purportedly governed transactions made by BLMIS for Herald Fund. (SAC ¶ 29.) Thus, transfers of funds to HSBC "for the benefit of" Herald Fund, as a result of those purported transactions, must have been in connection with the Trading Authorization. *See, e.g., Coregis Ins. Co. v. Am. Health Foundation, Inc.*, 241 F.3d 123 (2d Cir. 2001) (noting that "in connection with" is equivalent to "relating to" and "associated with"). The alleged transfers thus were made to a financial institution "in connection with a securities contract," and the Trustee may not recover them under Section 547(b).

That Madoff allegedly never completed any securities transactions does not defeat the safe harbor's protection here. Section 546(e)'s reference to transfers "in connection with a securities contract" differs from its reference to transfers that are "settlement payments." On the statute's face, only the latter requires an actual "payment," or transfer of cash or securities made to complete a securities transaction. *See In re Enron Corp.*, 325 B.R. 671, 684 (Bankr. S.D.N.Y.

---

[3] As discussed in footnote 5, *supra*, the Court may consider this document, which is specifically referenced in and central to the Second Amended Complaint, on this Rule 12(b)(6) and Rule 7012 motion to dismiss.

2005) ("In the securities industry, 'any transfer of cash or securities made to complete a securities transaction is considered a settlement payment.'") (quoting *In re Fin. Mgmt. Scis., Inc.*, 261 B.R. 150, 154 (Bankr. W.D.Pa. 2001)). The former, however, requires only a "contract." "'[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Russello v. United States*, 464 U.S. 16, 23 (1983) (quoting *United States v. Wong Kim Bo*, 472 F.2d 720, 722 (5th Cir. 1972)). Thus, Congress's failure to reference a "***payment***" in the 2006 additions to Section 546(e) indicates that Congress intended not to limit the reference to transfers "in connection with a securities ***contract***" to instances in which a purchase or sale of securities was actually consummated. Accordingly, the Trustee's claim for preferential transfers must be dismissed.

## III.     THE TRUSTEE'S ALLEGATIONS OF ACTUAL FRAUDULENT INTENT ARE INADEQUATE (COUNT 4).

The Trustee's claim to avoid the Six-Year Transfers as actual fraudulent conveyances under New York law fails because he does not adequately plead Herald Fund's actual fraudulent intent. Section 276 of the DCL states that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." N.Y. D.C.L. § 276. Under the New York statute, a bankruptcy trustee must plead actual fraudulent intent on the part of ***both*** the transferor and the transferee to state a claim under this provision. *See In re Andrew Velez Constr., Inc.*, 373 B.R. 262, 276 (Bankr. S.D.N.Y. 2007) ("Under the New York statute, unlike a claim under Bankruptcy Code § 548(a)(1), [plaintiff] must plead fraudulent intent of both the transferor and the transferee under § 276."); *In re Marketxt Holdings Corp.*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) ("Under the Bankruptcy

Code, the plaintiff must establish the actual fraudulent intent of the transferor/debtor; under the

NYDCL, the plaintiff must establish the actual fraudulent intent of both the transferor and the

transferee."); *In re Park South Secs., LLC*, 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005) (same); *In*

*re Manhattan Investment Fund Ltd.*, 310 B.R. 500, 508 (Bankr. S.D.N.Y. 2002) (same) (Lifland,

J.); *but see In re Bayou Group, LLC*, 396 B.R. 810, 826 n.5 (Bankr. S.D.N.Y. 2008) (stating that

Section 276 is concerned only with transferor's intent) (discussing cases).[4]

"Allegations of actual fraud may not be made upon information and belief unless the

facts at issue are within the defendant's knowledge." *Park South Secs.*, 326 B.R. at 517. A

bankruptcy trustee alleging actual fraud may rely on allegations of circumstantial evidence to

establish fraudulent intent, including so-called "badges of fraud." *Marketxt Holdings*, 361 B.R.

at 395-96; *Park South Secs.*, 326 B.R. at 517. Such "badges of fraud" include:

> (1) a close relationship among the parties to the transaction; (2) a secret and hasty
> transfer not in the usual course of business; (3) inadequacy of consideration;
> (4) the transferor's knowledge of the creditor's claim and the transferor's inability
> to pay it; (5) the use of dummies or fictitious parties; and (6) retention of control
> of property by the transferor after the conveyance.

*Park South Secs.*, 326 B.R. at 518 n.11. Here, the Trustee fails entirely to plead actual fraudulent

intent by Herald Fund with even this merely circumstantial evidence.

---

[4]   Some courts within the jurisdiction state that Section 276, like Section 548(a)(1)(A), requires actual fraudulent
intent on the part of only the transferor. *See, e.g., Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992, 999
(S.D.N.Y. 1991) ("Case law supports [plaintiff's] position that it is the intent of the transferor and not the intent
of the transferee that is relevant to liability under § 276."); *In re Actrade Fin. Techs. Ltd.*, 337 B.R. 791, 808-09
(Bankr. S.D.N.Y. 2005) (discussing cases); *In re Le Café Crème, Ltd.*, 244 B.R. 221, 239 (Bankr. S.D.N.Y.
2000) (stating that intent of transferor and not transferee is dispositive under Section 276); *Secs. Investor
Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293 (Bankr. S.D.N.Y. 1999) (under Section 276, "[i]t is
the intent of the transferor and not that of the transferee that is dispositive"). Without any discussion of whether
proof of the transferee's intent is required, the Second Circuit has stated simply that, to prove actual fraud under
Section 276, "'a creditor must show intent to defraud on the part of the transferor.'" *In re Sharp Int'l Corp.*,
403 F.3d 43, 56 (2d Cir. 2005) (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 n.5 (2d Cir. 1995)).
The *Sharp* court made no mention of the divide among the courts on this issue, nor did it provide any analysis
of whether only one party's fraudulent intent would be necessary. Since *Sharp*, courts within the jurisdiction
continue to require proof of the actual fraudulent intent of both parties for a claim under Section 276. *See, e.g.,
Andrew Velez*, 373 B.R. at 276; *Marketxt Holdings*, 361 B.R. at 395; *Park South Secs.*, 326 B.R. at 517. Thus,
the *Sharp* court's mere passing reference to intent on the part of the transferor does not decide this issue under
New York law.

First, nowhere does the Trustee allege direct evidence of Herald Fund's purported "actual intent to hinder, delay, or defraud creditors" on anything more than information or belief. (SAC ¶ 36.) Indeed, in setting forth his count under Section 276, the Trustee does not allege at all that Herald Fund acted with such actual intent, stating only that "[t]he Six-Year Transfers were made *by BLMIS with the actual intent to hinder, delay, or defraud* the creditors of BLMIS." (*Id.* ¶ 63 (emphasis added).) This is insufficient. *Park South Secs.*, 326 B.R. at 517.

Second, the Trustee does not allege any circumstantial evidence constituting "badges of fraud" that would meet the pleading standard. *See id.* at 518 n.11. For example, he does not allege any close relationship between Herald Fund and BLMIS; on the contrary, the allegations indicate that Herald Fund maintained a more distant relationship with BLMIS than did any direct investor, because HSBC (Luxembourg) acted as its custodian and was thus the holder of the Herald Fund Account. (SAC ¶¶ 27, 29.) Nor does he allege that the transfers were made in secret or in haste; rather, he alleges that the transfers were made by wire to a major financial institution. (*Id.* ¶¶ 33-35.) The allegations also contradict any inadequacy of consideration, as the Trustee explicitly alleges that HSBC deposited $1,533,741,975.00 with BLMIS for the benefit of Herald Fund, while BLMIS only transferred approximately one-third that amount out of the Herald Fund Account. (*Id.* ¶¶ 31, 35.) He also does not allege the use of "dummies or fictitious parties" or that BLMIS or Madoff retained any "possession, benefit, or use" of the transferred funds.

Nor does the Trustee allege any other circumstantial evidence indicating that Herald Fund acted with actual fraudulent intent. While the Trustee lists seventeen "indicia of irregularity and fraud" of which Herald Fund was allegedly "on notice," he has not alleged any link between those indicia and Herald Fund itself that would merit an inference of actual fraudulent intent.

(*Id.*, ¶ 36.) For example, the Trustee alleges three indicia based on purported irregularities in the monthly account statements for the Herald Fund Account, yet he nowhere alleges that Herald Fund — as opposed to HSBC (Luxembourg) as custodian or some other entity — actually received such monthly statements at any time. (*Id.* ¶¶ 36(g), (h), & (j).) Similarly, the Trustee refers to financial industry press reports, but he never alleges that Herald Fund was aware of such reports. (*Id.* ¶ 36(a).) It should not be presumed that Herald Fund, a Cayman Islands entity with non-U.S. principals, is necessarily aware of reports in the U.S. press.

Indeed, any allegation that Herald Fund acted with actual intent to hinder, delay, or defraud BLMIS's creditors makes no sense. If Herald Fund acted with any fraudulent intent at all, its only logical action would have been to withdraw the entirety of its investment. Yet the Trustee himself alleges that Herald Fund did not withdraw the majority of its investment but instead lost almost $1 billion with Madoff. (*Id.* ¶¶ 31, 35.) The Trustee's illogical attacks on yet another victim of the Ponzi scheme should not be permitted. *See Iqbal*, 129 S.Ct. at 1949 ("[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss.").

## IV. THE TRUSTEE CANNOT STATE A CLAIM FOR TURNOVER AND ACCOUNTING WHEN THE SUBJECT PROPERTY IS IN DISPUTE (COUNT 1).

The Trustee's first claim is for turnover and accounting pursuant to Section 542 of the Bankruptcy Code with respect to the 90-Day, Two-Year, and Six-Year Transfers. The Trustee alleges that these transfers "constitute property of the estate to be recovered and administered by the Trustee pursuant to section 541 of the Bankruptcy Code and pursuant to 15 U.S.C. § 78fff-2(c)(3)." (SAC ¶ 43.) Yet this assertion concerns the very property the Trustee seeks to recover in this action, and Herald Fund emphatically disputes the Trustee's bare legal conclusion that he has a right to the alleged transfers. The law is clear that no claim for turnover and accounting can stand in such a case.

Section 542(a) authorizes a bankruptcy trustee to seek an accounting or compel the turnover of property of an estate that the trustee can use, sell, or lease. 11 U.S.C. § 542(a); *see also In re Teligent, Inc.*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005) (holding that Section 542(a) does not apply when plaintiff did not identify property of the estate subject to turnover). But allegedly fraudulently transferred property is not property of the estate subject to turnover unless and until the trustee succeeds in an avoidance action as to that property. *See In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992) (referring to congressional intent that property subject to fraudulent transfer action is not property of the estate until recovered through avoidance action); *Teligent*, 325 B.R. at 137 ("[P]roperty that has been fraudulently or preferentially transferred does not become property of the estate until it has been recovered.").

The Trustee cannot assert a separate claim for turnover and accounting to recover the transfers through a circumvention of the standards in Sections 544, 547, or 548 of the Bankruptcy Code. As this court stated in *In re Teligent, Inc.*, 307 B.R. 744 (Bankr. S.D.N.Y. 2004), the "trustee cannot compel the turnover of non-estate property under 11 U.S.C. § 542, and circumvent the more restrictive fraudulent transfer claim in the process." *Id.* at 751. Thus, "in order to state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate." *In re Student Fin. Corp.*, 335 B.R. 539, 554 (D. Del. 2005) (dismissing claim for turnover when property is subject of fraudulent conveyance claim, transfer has not yet been avoided, and interests are in dispute). The Trustee can do neither here, where he presently seeks to recover the very same property through his avoidance powers.

Finally, the Trustee fails to allege adequately that he is entitled to avoid any of the alleged transfers in dispute, as discussed throughout this memorandum. Therefore, even if the

Trustee were properly able to bring a claim for turnover and accounting before establishing that he has a right to the alleged transfers - which he is not - the Trustee fails to show that he is entitled to a turnover and accounting of the underlying property. Accordingly, the Trustee's claim for turnover and accounting must be dismissed.

## V. THE TRUSTEE PRESENTS NO ADEQUATE BASIS FOR AN OBJECTION TO HERALD FUND'S SIPA CLAIM (COUNT 5).

The Trustee's Second Amended Complaint adds an objection to Herald Fund's timely-filed claim pursuant to SIPA and the Bankruptcy Code that is not well-founded for at least two reasons. First, the Trustee presents only conclusory allegations to support his objection, stating that Herald Fund's claim is "not supported by the books and records of BLMIS nor the claim materials submitted by Herald Fund." (SAC ¶ 67.) The Trustee does not provide any facts supporting this bare allegation. This is insufficient. The Court need not "accept as true a legal conclusion couched as a factual allegation," *Papasan*, 478 U.S. at 286, and the Trustee's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Here, there are *no* factual allegations supporting the Trustee's statement that Herald Fund's claim is not supported by the purportedly relevant materials. Quite the contrary, the Trustee alleges that almost $1 billion of the investment made on behalf of Herald Fund was lost with BLMIS, thereby establishing the validity of Herald Fund's claim against BLMIS. The objection is therefore insufficient.

Further, the Trustee himself apparently relies on the "books and records of BLMIS" as the basis for his avoidance claims against Herald Fund. The Trustee cannot have it both ways, asserting at the same time that the BLMIS records are sufficient to support his argument that approximately $500 million was withdrawn for the benefit of Herald Fund but insufficient to

support Herald Fund's claim that $1.5 billion was invested for it. Either the records show the movement of funds, or they do not.

Second, the Trustee's citation to Section 502(d) of the Bankruptcy Code does nothing to save his objection. "What is necessary for the invocation of § 502(d) is a judicial determination that the creditor received a preference (and has failed to repay it)." *In re Chase & Sanborn Corp.*, 124 B.R. 368, 370 (Bankr. S.D. Fla. 1991) (citing cases). Here, the Trustee does not and cannot allege that there has been any judicial determination that Herald Fund received either a preference or a fraudulent transfer. Indeed, without actually proving the claims that he asserts in this adversary complaint, the Trustee will not be able to invoke Section 502(d) at all. Accordingly, the Trustee's objection to Herald Fund's SIPA claim should be overruled and denied.

## VI. THE TRUSTEE CANNOT RECOVER ANY TAX PAYMENTS MADE TO ANY TAX AUTHORITY ON HERALD FUND'S BEHALF.

The Trustee's efforts to recover any amount withdrawn from the Herald Fund Account for the purpose of making tax payments to a taxing authority on Herald Fund's behalf fail for two reasons. First, any moneys withheld by BLMIS for the purpose of later payment to tax authorities are, as a matter of black letter law, held in trust for the tax authority and are not property of the estate recoverable by the Trustee. *See Begier*, 496 U.S. at 67. Second, to the extent that the Tax Payments were made by BLMIS in the 90 days prior to the Filing Date, they are not avoidable as preferential transfers, because they were not made on account of "an antecedent debt owed by the debtor." 11 U.S.C. § 547(b)(2). Rather, as alleged by the Trustee, they were apparently timely tax payments made for Herald Fund's benefit.

**A.     Any Taxes Withheld By BLMIS and Paid to Governmental Tax Authorities Were Held in Trust for Those Authorities and Do Not Constitute Property of the Estate.**

It is axiomatic that taxes collected or withheld by a debtor for eventual payment to a taxing authority do not constitute "property of the estate" but instead are held in trust for the taxing authority, and thus cannot be avoided by a bankruptcy trustee. *See Begier*, 486 U.S. at 59; *see also* 11 U.S.C. § 541(a)(1) (defining property of the debtor's estate as "all legal or equitable interests of the debtor in property as of the commencement of the case"). Indeed, the Internal Revenue Code mandates that, "whenever any person is required to collect or withhold any internal revenue tax from any other person and pay over such tax to the United States, the amount of tax so collected or withheld shall be held to be a special fund in trust for the United States." 26 U.S.C. § 7501(a). Thus, even though a debtor may pay the tax payment to the taxing authority at a later date, a trust for the benefit of the taxing authority is created at the moment the funds are withheld, and the property is then not that of the debtor. *See Begier*, 486 U.S. at 61-62; *In re Wellington Foods, Inc.*, 165 B.R. 719, 724-25 (Bankr. S.D. Ga. 1994). This is true even if the debtor does not actually hold the money in a separate trust account in favor of the authority. *Id.* at 724. As only a transfer of an "interest of the debtor in property" may be avoided by a bankruptcy trustee under either Section 547 or 548 of the Code, such tax payments are not avoidable transfers.

In this case, the Trustee alleges that in the ninety days preceding the Filing Date "BLMIS withdrew funds from the Herald Fund Account on 40 occasions and made tax payments to the appropriate tax authorities on behalf of Herald Fund totaling $1,487,933." (SAC ¶ 33.) The Trustee further alleges that in the two years preceding the Filing Date "BLMIS withdrew funds from the Herald Fund Account on 214 occasions to make tax payments to the appropriate tax authorities on behalf of Herald Fund totaling $5,823,339" and that in the six years preceding the

Filing Date "BLMIS withdrew funds from the Herald Fund Account on 278 occasions to make tax payments to the appropriate tax authorities on behalf of Herald Fund totaling $2,922,574." (*Id.* ¶¶ 34, 35.) Such moneys were deemed to be held in trust for the governmental tax authority at the moment they were withheld by BLMIS, and they retained that status until they were paid to such authority. *See Begier*, 486 U.S. at 61-62. For this reason, any money withheld from the Herald Fund Account and paid "to the appropriate tax authorities" cannot, as a matter of law, be avoidable because it did not constitute property of the BLMIS estate. *Id.* at 63-64 (noting that "taxes withheld or collected prior to the filing of the bankruptcy petition were not property of the estate") (citing S. Rep. No. 95-1106, at 33); *see also United States v. Pullman Const. Indus., Inc.*, 210 B.R. 302, 308 (N.D. Ill. 1997) (noting that any payments made to the Internal Revenue Service from funds held in trust cannot be considered a preferential payment because the debtor has no property interest in such trust-fund taxes). Accordingly, to the extent that any claim for relief seeks recovery of Tax Payments made by BLMIS on behalf of Herald Fund, that claim should be dismissed as a matter of law.

### B. The Tax Payments Made in the Ninety Days Prior to the Filing Date Were Not Transfers on Account of an Antecedent Debt Owed by the Debtor.

Inasmuch as it includes a claim for tax payments made in the ninety days prior to the filing date, the Trustee's second claim for relief, for preferential transfers pursuant to Section 547(b), should be dismissed because any such tax payment was not "for or on account of an antecedent debt owed by the debtor before such transfer was made." *See* 11 U.S.C. § 547(b). First, "a debt for a tax is incurred on the day when such tax is last payable without penalty, including any extension." 11 U.S.C. § 547(a)(4). Indeed, "for preference purposes under § 547(a)(4), the relevant date is when a debtor is exposed to penalties regardless of the date the return is actually due." *Pullman*, 210 B.R. at 307-08. Thus, the mere fact of timely payment of

taxes will, as a matter of law, preclude recovery of such funds as a preference by the trustee, because the requirement that payment be on account of an antecedent debt is not satisfied. *See, e.g., id.; see also In re E&S Comfort, Inc.*, 92 B.R. 616, 624 (Bankr. E.D. Pa. 1988) (noting that taxes that are timely paid cannot be avoided by trustee as preference under 11 U.S.C. § 547(b)).

Here, the Trustee alleges that BLMIS withdrew a total of $1,487,933 on forty occasions within the ninety days prior to the Filing Date and remitted that amount to the appropriate tax authorities on Herald Fund's behalf. (SAC ¶ 33.) The Trustee makes no mention of any untimely payment of taxes or any exposure to penalties by the taxing authorities. Thus, because at the time the Tax Payments were made there was no antecedent debt, under the plain language of the statute, the Tax Payments were not preferential transfers and may not be avoided by the Trustee.

Second, even if the Tax Payments were made "on account of an antecedent debt" — which they were not — they were not an antecedent debt "of the debtor," *i.e.*, BLMIS. 11 U.S.C. § 547(b). To the contrary, the Trustee alleges that BLMIS "made tax payments to the appropriate tax authorities *on behalf of Herald Fund*" and that the transfers were "done *for the benefit of Herald Fund*."[5] (SAC ¶¶ 33-35 (emphases added).) Under the statute's plain language, these allegations are insufficient to allow recovery of any tax payments as preferences. *See In re 1634 Assocs.*, 157 B.R. 231, 232-33 (Bankr. S.D.N.Y. 1993) (granting defendant's motion for summary judgment on preference claim when alleged transfer was on account of an

---

[5] The Trustee alleges in a conclusory manner that the 90-Day Transfers, presumably including those Tax Payments made during the ninety days before the Filing Date, were "made on account of antecedent debts owed by BLMIS before such transfer was made." (SAC ¶ 49.) The Trustee provides no factual allegations explaining what antecedent debt BLMIS purportedly owed and to who for these tax payments. Such bare legal conclusions are insufficient to survive a motion to dismiss. *See Iqbal*, 129 S.Ct. at 1949. Indeed, the contradictory nature of the Trustee's allegations, which assert that these transfers were made both for the benefit of Herald Fund and on account of a debt of BLMIS, fails even to put Herald Fund on notice of what the Trustee actually asserts, which is the basic purpose of Rule 8(a) and Rule 7008.

antecedent debt owed, not by the debtor, but by another entity). Accordingly, to the extent the Trustee's second claim for relief seeks recoupment of these payments, it should be dismissed.

## VII. THE TRUSTEE IS NOT ENTITLED TO A CONSTRUCTIVE TRUST OR ASSIGNMENT OF HERALD FUND'S TAX REFUNDS.

The remedies the Trustee seeks also overstep his authority. In paragraph seven of his prayer for relief, the Trustee asks the Court to establish a constructive trust over the proceeds of the transfers in favor of the Trustee for the benefit of BLMIS's creditors. (SAC at 23.) Similarly, he asks the Court to assign all of Herald Fund's rights to seek tax refunds from federal, state, and local governmental taxing authorities for amounts paid on "fictitious profits" in connection with its investments with BLMIS. (*Id.* at 23.) The Trustee fails to plead any legal or statutory authority to seek either form of relief. Indeed, the Trustee has no such authority, and therefore the Court should deny the requested relief.

### A. The Trustee is Not Entitled to a Constructive Trust.

Neither SIPA, the Bankruptcy Code, nor the DCL provide any statutory basis upon which the Trustee may petition this Court to establish a constructive trust over the proceeds of the transfers made for the benefit of Herald Fund. *See* 15 U.S.C. § 78fff-1(a); 11 U.S.C. § 550; N.Y. D.C.L. § 278; *see also FDIC v. Marke Painting Co.*, No. 88 Civ. 8675, 1992 WL 212372, at *5 (S.D.N.Y. Aug. 26, 1992) (noting that a constructive trust is not a remedy under Section 278 of the DCL). Indeed, even if the Trustee were able to prove any of his avoidance claims — which he cannot — in order for this Court to impose a constructive trust, the Trustee would have to plead and prove the elements necessary to establish his right to that remedy under state law. *See, e.g., Pfohl Bros. Landfill Steering Comm. v. Allied Waste Sys., Inc.*, 255 F. Supp. 2d 134, 168 (W.D.N.Y. 2003) (claim for constructive trust is a distinct and alternate basis for relief from a fraudulent conveyance cause of action). These are (1) a confidential or fiduciary relationship;

(2) a promise, express or implied; (3) a transfer made in reliance on that promise; and (4) unjust enrichment. *See Bankers Sec. Life Ins. Soc'y v. Shakerdge*, 49 N.Y.2d 939, 940 (N.Y. 1980). The Trustee has not met that pleading burden.

Here, the Trustee is barred from seeking a constructive trust as a matter of law because he does not and cannot allege that Herald Fund was unjustly enriched. Quite to the contrary, it is clear from the Second Amended Complaint that Herald Fund invested approximately $1.5 billion with BLMIS through HSBC (Luxembourg) and withdrew approximately $578 million, leaving it with a loss of almost $1 billion. (SAC ¶¶ 31, 35.) Thus, on the face of the pleadings, the Trustee cannot establish the necessary element of unjust enrichment, and the request for a constructive trust should be denied outright. *See In re Estate of Partos*, 611 N.Y.S.2d 30, 31 (N.Y. App. Div. 1994) (denying imposition of a constructive trust where plaintiff failed to establish that the defendant was unjustly enriched).

Furthermore, even if the Trustee had alleged this element — which he has not — he still could not maintain his request for a constructive trust because he fails to allege *any* facts upon which this Court could plausibly infer a confidential or fiduciary relationship between Herald Fund and any BLMIS creditor, let alone a promise or a transfer made in reliance upon that promise. *See Iqbal*, 129 S.Ct. at 1949-50 (noting that in order to survive a motion to dismiss a complaint must state a claim for relief that is plausible on its face). Because the Trustee has not and cannot make such an allegation here, his request for the establishment of a constructive trust should be denied. *See Partos*, 611 N.Y.S.2d at 31.

**B.     The Trustee Is Not Entitled to An Assignment of Herald Fund's Tax Refunds.**

The Bankruptcy Code limits the property that the Trustee may seek "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b), or 724(a)" to "the property

transferred, or, if the court so orders, the value of such property." 11 U.S.C. § 550(a). This limitation reflects the remedial purpose of Section 550(a); that is, "to restore the estate to the financial condition it would have enjoyed if the transfer had not occurred." *In re Centennial Textiles, Inc.*, 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998). Indeed, because the purpose of an avoidance action is to put "the estate back into the financial condition" it enjoyed before the transfer, the Trustee is limited to recovering the amount of the transfer and nothing more. *Cf. In re Sickels*, 392 B.R. 423, 427 (Bankr. N.D. Iowa 2008).

Here, the Trustee has no right to an assignment of Herald Fund's right to seek future tax refunds as such refunds are not "property transferred" out of the BLMIS estate. 11 U.S.C. § 550(a). Rather, any such refunds are outside the reach of the Trustee because the BLMIS estate never had legal or equitable title to them. *Cf.* 11 U.S.C. § 541(a)(1) (defining property of the debtor's estate as "all legal or equitable interests of the debtor in property as of the commencement of the case"). Further, Herald Fund's potential liability should the Trustee succeed in avoiding any of the transfers alleged in the Complaint is limited to the value of those transfers. 11 U.S.C. § 550(a). The Trustee has nowhere alleged that assignment of a right to seek tax refunds is necessary for recovery of any liability he may ultimately prove. Accordingly, the Court should deny the Trustee's request for assignment of Herald Fund's tax refunds as a matter of law.

## CONCLUSION

For the reasons set forth above, the Trustee's claims should be overruled and dismissed with prejudice in their entirety, and Herald Fund should be awarded its costs and such other relief as is just and proper.

Dated: October 26, 2009         Respectfully submitted,

/s/ Laura B. Kadetsky
Jay P. Lefkowitz, P.C.
Joseph Serino, Jr.
Laura B. Kadetsky
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jay.lefkowitz@kirkland.com
joseph.serino@kirkland.com
laura.kadetsky@kirkland.com

*Attorneys for Defendant Herald Fund SPC*

**KIRKLAND & ELLIS LLP**
Jay P. Lefkowitz, P.C.
Joseph Serino, Jr.
Laura B. Kadetsky
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jay.lefkowitz@kirkland.com
joseph.serino@kirkland.com
laura.kadetsky@kirkland.com

*Attorneys for Defendant Herald Fund SPC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BERNARD L. MADOFF INVESTMENT | ) | Adv. Pro. No. 08-01789 (BRL) |
| SECURITIES LLC, | ) | |
| | ) | SIPA LIQUIDATION |
| Debtor. | ) | |
| | ) | (Substantively Consolidated) |
| | ) | |
| | ) | |
| IRVING H. PICARD, Trustee for the Liquidation | ) | |
| of Bernard L. Madoff Investment Securities LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 09-01359 (BRL) |
| | ) | |
| HERALD FUND SPC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HSBC BANK PLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HSBC SECURITIES SERVICES | ) | |
| (LUXEMBOURG) S.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DECLARATION OF LAURA B. KADETSKY IN SUPPORT OF HERALD FUND SPC'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

**Laura B. Kadetsky** hereby declares as follows:

1. I am a partner at the law firm of Kirkland & Ellis LLP, attorneys for Herald Fund SPC. I submit this declaration in support of Herald Fund SPC's Motion to Dismiss the Second Amended Complaint.

2. A true and correct copy of the Customer Agreement with Bernard L. Madoff Investment Securities LLC (BLMIS) governing the account at BLMIS held on behalf of Herald Fund SPC and its accompanying Trade Authorization is attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 26 day of October 2009.

Laura B. Kadetsky

# EXHIBIT A

# BERNARD L. MADOFF
**INVESTMENT SECURITIES LLC**
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 838-4061

BANK OF BERMUDA (LUXEMBOURG)SA
SPECIAL CUSTODY ACCOUNT FOR
HERALD FUND SPC-HERALD USA
13 RUE GOETHE L-1637
LUXEMBOURG, LUXEMBOURG

March 25, 2004

Account Information Verification

Account:  1FR109

Dear Client:
In accordance with SEC regulation 17a-3: Books and Records, we are required to verify that the following information is complete and accurate.

**Account Name and Address**
BANK OF BERMUDA (LUXEMBOURG)SA
SPECIAL CUSTODY ACCOUNT FOR
HERALD FUND SPC-HERALD USA
13 RUE GOETHE L-1637
LUXEMBOURG, LUXEMBOURG

**Account Information**
| | |
|---|---|
| Account Type: | Corporation |
| Investment Objective: | * Trading Income |
| Annual Income: | |
| Net Worth: | |

**Customer Information**
| | |
|---|---|
| Name: | BANK OF BERMUDA (LUXEMBOURG)SA |
| | SPECIAL CUSTODY ACCOUNT FOR |
| | HERALD FUND SPC-HERALD USA |
| Street: | 13 RUE GOETHE L-1637 |
| Apt/Suite: | |
| City: | LUXEMBOURG |
| State: | |
| Country: | LUXEMBOURG |
| Province: | |
| Zip Code: | |
| Home: | |
| Business: | 011 352 40 4646 405 |
| Tax ID: | ON FILE |
| DOB: | |
| Occupation: | |
| Company/Firm: | |
| Member Firm: | |

**Alternate Address**
| | |
|---|---|
| Name: | M&C CORPORATE SERVICES LIMITED |
| | UGLAND HOUSE |
| Street: | POBOX 309 GT |
| Apt/Suite: | |
| City: | SOUTH CHURCH STREET |
| State: | |
| Country: | CAYMAN ISLANDS |
| Province: | |
| Zip Code: | George Town, Grand Cayman |
| Home: | |
| Business: | |

If any of your account or customer information is found to be inaccurate, please contact us at
**212 230-2424**

* Trading Income - Emphasis on short-Term trading practices to capitalize on market fluctuations. This objective is associated with market risk.

Affiliated with:
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1J 8DT, Tel. 020-7493 6222

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

## CUSTOMER AGREEMENT

In consideration for you (the "Broker") opening or maintaining one or more accounts (the "Customer"), the Customer agrees to the terms and conditions contained in this Agreement. The heading of each provision of the Agreement is for descriptive purpose only and shall not be deemed to modify or qualify any of the rights or obligations set forth in each such provision. For purposes of this Agreement, "securities and other property" means, but is not limited to money, securities, financial instruments and commodities of every kind and nature and related contracts and options, except that the provisions of paragraph 13 herein (the arbitration clause) shall not apply to commodities accounts. This definition includes securities or other property currently or hereafter held, carried or maintained by you or by any of your affiliates, in your possession or control, or in the possession or control of any such affiliate, for any purpose, in and for any of my accounts now or hereafter opened, including any account in which I may have an interest.

### 1. APPLICABLE RULES AND REGULATIONS

All transactions in the Customer's Account shall be subject to the constitution, rules, regulations, customs and usages of the exchange or market, and its clearing house, if any, where the transactions are executed by the Broker or its agents, including its subsidiaries and affiliates. Also, where applicable, the transactions shall be subject (a) to the provisions of (1) the Securities Exchange Act of 1934, as amended, and (2) the Commodities Exchange Act, as amended; and (b) to the rules and regulations of (1) the Securities and Exchange Commission, (2) the Board of Governors of the Federal Reserve System and (3) the Commodities Futures Trading Commission.

### 2. AGREEMENT CONTAINS ENTIRE UNDERSTANDING/ASSIGNMENT

This Agreement contains the entire understanding between the Customer and the Broker concerning the subject matter of this Agreement. Customer may not assign The rights and obligations hereunder without first obtaining the prior written consent of the Broker.

### 3. SEVERABILITY

If any provision of this Agreement is held to be invalid, void or unenforceable by reason of any law, rule, administrative order or judicial decision, that determination shall not affect the validity of the remaining provisions of this Agreement.

### 4. WAIVER

Except as specifically permitted in this Agreement, no provision of this Agreement can be, nor be deemed to be, waived, altered, modified or amended unless such is agreed to in a writing signed by the broker.

### 5. DELIVERY OF SECURITIES

Without abrogating any of the Broker's rights under any other portion of this Agreement and subject to any indebtedness of the Customer to the Broker, the Customer is entitled, upon appropriate demand, to receive physical delivery of fully paid securities in the Customer's Account.

### 6. SALES BY CUSTOMER

The Customer understands and agrees any order to sell "short" will be designated as such by the Customer, and that the Broker will mark the order as "short". All other sell orders will be for securities owned ("long"), at that time, by the Customer by placing the order the Customer affirms that he will deliver the securities on or before the settlement date.

**7. BROKER AS AGENT**

The customer understands that the Broker is acting as the Customer's agent, unless the Broker notifies the Customer, in writing before the settlement date for the transaction, that the Broker is acting as dealer for its own account or as agent for some other person.

**8. CONFIRMATIONS AND STATEMENTS**

Confirmations of transactions and statements for the Customer's Account(s) shall be binding upon the Customer if the Customer does not object, in writing, within ten days after receipt by the Customer.

**9. SUCCESSORS**

Customer hereby agrees that this Agreement and all the terms thereof shall be binding upon Customer's heirs, executors, administrators, personal representatives and assigns. This Agreement shall ensure to the benefit of the Broker's present organization, and any successor organization, irrespective of any change or changes at any time in the personnel thereof, for any cause whatsoever.

**10. CHOICE OF LAWS**

THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF _____ AND SHALL BE CONSTRUED, AND THE RIGHTS AND LIABILITIES OF THE PARTIES DETERMINED, IN ACCORDANCE WITH THE LAWS OF THE STATE OF _____.

**11. CAPACITY TO CONTRACT, CUSTOMER AFFILIATION**

By signing below, the Customer, represents that he/she is of legal age, and that he/she is not an employee of any exchange, or of any corporation of which any exchange owns a majority of the capital stock, or of a member of any exchange, or of a member firm or member corporation registered on any exchange, or of a bank, trust company, insurance company or of any corporation, firm or individual engaged in the business of dealing, either as broker or as principal, in securities, bills of exchange, acceptance or other forms of commercial paper, and that the Customer will promptly notify the Broker in writing if the Customer is now or becomes so employed. The Customer also represents that no one except the Customer has an interest in the account or accounts of the Customer with you.

**12. ARBITRATION DISCLOSURES**

* ARBITRATION IS FINAL AND BINDING ON THE PARTIES.

* THE PARTIES ARE WAIVING THEIR RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO JURY TRIAL.

* PRE-ARBITRATION DISCOVERY IS GENERALLY MORE LIMITED THAN AND DIFFERENT FROM COURT PROCEEDINGS.

* THE ARBITRATORS AWARD IS NOT REQUIRED TO INCLUDE FACTUAL FINDINGS OR LEGAL REASONING AND ANY PARTY'S RIGHT TO APPEAL OR TO SEEK MODIFICATION OF RULINGS BY THE ARBITRATORS IS STRICTLY LIMITED.

* THE PANEL OF ARBITRATORS WILL TYPICALLY INCLUDE A MINORITY OF ARBITRATORS WHO WERE OR ARE AFFILIATED WITH THE SECURITIES INDUSTRY.



**13. ARBITRATION**

THE CUSTOMER AGREES, AND BY CARRYING AN ACCOUNT FOR THE CUSTOMER THE BROKER AGREES THAT ALL CONTROVERSIES WHICH MAY ARISE BETWEEN US CONCERNING ANY TRANSACTION OR THE CONSTRUCTION, PERFORMANCE, OR BREACH OF THIS OR ANY OTHER AGREEMENT BETWEEN US PERTAINING TO SECURITIES AND OTHER PROPERTY, WHETHER ENTERED INTO PRIOR, ON OR SUBSEQUENT TO THE DATE HEREOF, SHALL BE DETERMINED BY ARBITRATION UNDER THIS AGREEMENT SHALL BE CONDUCTED PURSUANT TO THE FEDERAL ARBITRATION ACT AND THE LAWS OF THE STATE DESIGNATED IN PARAGRAPH 16, BEFORE THE AMERICAN ARBITRATION ASSOCIATION, OR BEFORE THE NEW YORK STOCK EXCHANGE, INC. OR AN ARBITRATION FACILITY PROVIDED BY ANY OTHER EXCHANGE OF WHICH THE BROKER IS A MEMBER, OR THE NATIONAL ASSOCIATION OF SECURITIES DEALERS, INC. OR THE MUNICIPAL SECURITIES RULE MAKING BOARD AND IN ACCORDANCE WITH THE RULES OBTAINING OF THE SELECTED ORGANIZATION. THE CUSTOMER MAY ELECT IN THE FIRST INSTANCE WHETHER ARBITRATION SHALL BE BY THE AMERICAN ARBITRATION ASSOCIATION, OR BY AN EXCHANGE OR SELF-REGULATORY ORGANIZATION OF WHICH THE BROKER IS A MEMBER, BUT IF THE CUSTOMER FAILS TO MAKE SUCH ELECTION, BY REGISTERED LETTER OR TELEGRAM ADDRESSED TO THE BROKER AT THE BROKER'S MAIN OFFICE, BEFORE THE EXPIRATION OF TEN DAYS AFTER RECEIPT OF A WRITTEN REQUEST FROM THE BROKER-TO MAKE SUCH ELECTION, THEN THE BROKER MAY MAKE SUCH ELECTION, THE AWARD OF THE ARBITRATORS, OR OF THE MAJORITY OF THEM SHALL BE FINAL, AND JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT, STATE OR FEDERAL, HAVING JURISDICTION.

**14. DISCLOSURES TO ISSUERS**

Under rule 14b-1(c) of the Securities Exchange Act of 1934, we are required to disclose to an issuer the name, address, and securities position of our customers who are beneficial owners of that issuer's securities unless the customer objects. Therefore, please check one of the boxes below:

____ Yes, I do object to the disclosure of information.

____ No, I do not object to the disclosure of such information.

THIS AGREEMENT CONTAINS A PRE-DISPUTE ARBITRATION CLAUSE AT PARAGRAPH 13.

please
sign
here

X_____    (X)_____
(Customer Signature/date)         (Customer Signature/date)

HERALD FUND SPC - HERALD USA SEGREGATED PORTFOLIO ONE

PO BOX 309GT, UGLAND HOUSE _____
(Customer Address)                (Account Number)

SOUTH CHURCH STREET GEORGE

TOWN, GRAND CAYMAN,

CAYMAN ISLANDS

**BERNARD L. MADOFF**
INVESTMENT SECURITIES LLC
885 Third Avenue New York, NY 10022

212 230-2424
800 334-1343
Fax 212 486-8178

## TRADING AUTHORIZATION LIMITED TO PURCHASES
## AND SALES OF SECURITIES AND OPTIONS

To Whom It May Concern:

The undersigned hereby authorizes Bernard L. Madoff (whose signature appears below) as his agent and attorney in fact to buy, sell and trade in stocks, bonds, options and any other securities in accordance with your terms and conditions for the undersigned's account and risk and in the undersigned's name, or number on your books. The undersigned hereby agrees to indemnify and hold you harmless from, and to pay you promptly on demand any and all losses arising therefrom or debit balance due thereon.

In all such purchases, sales or trades you are authorized to follow the instructions of Bernard L. Madoff in every respect concerning the undersigned's account with you; and he is authorized to act for .he undersigned and in the undersigned's behalf in the same manner and with the same force and effect as the undersigned might or could do with respect to such purchases, sales or trades as well as with respect to all other things necessary or incidental to the furtherance or conduct of such purchases, sales or trades. All purchases, sales or trades shall be executed strictly in accordance with the established trading authorization directive.

The undersigned hereby ratifies and confirms any and all transactions with you heretofore or hereafter made by the aforesaid agent or for the undersigned's account.

This authorization and indemnity is in addition to (and in no way limits or restricts) any rights which you may have under any other agreement or agreements between the undersigned and your firm.

This authorization and indemnity is also a continuing one and shall remain in full force and effect until revoked by the undersigned by a written notice addressed to you and delivered to your office at 885 Third Avenue but such revocation shall not affect any liability in any way resulting from transaction initiated prior to such revocation. This authorization and indemnity shall enure to the benefit of your present firm and any successor firm or firms irrespective of any change or changes at any time in the personnel thereof for any cause whatsoever, and of the assigns of your present firm or any successor firm.

Dated,

X please sign here

(City)                (State)

Very truly yours,

(Client Signature)

Signature of Authorized Agent:

**Affiliated with:**
Madoff Securities International Limited
12 Berkeley Street, Mayfair, London W1J 8DT. Tel 020-7493 6222

Form **W-8BEN**

(Rev. December 2000)

Department of the Treasury
Internal Revenue Service

## Certificate of Foreign Status of Beneficial Owner for United States Tax Withholding

► Section references are to the Internal Revenue Code. ► See separate instructions.
► Give this form to the withholding agent or payer. Do not send to the IRS.

OMB No. 1545-1621

**Do not use this form for:** — Instead, use Form:

- A U.S. citizen or other U.S. person, including a resident alien individual . . . . . . . . . . . . . . W-9
- A person claiming an exemption from U.S. withholding on income effectively connected with the conduct of a trade or business in the United States . . . . . . . . . . . . . . . . . . . . . . . W-8ECI
- A foreign partnership, a foreign simple trust, or a foreign grantor trust (see instructions for exceptions) . . . W-8ECI or W-8IMY
- A foreign government, international organization, foreign central bank of issue, foreign tax-exempt organization, foreign private foundation, or government of a U.S. possession that received effectively connected income or that is claiming the applicability of section(s) 115(2), 501(c), 892, 895, or 1443(b) (see instructions) . . . W-8ECI or W-8EXP

Note: *These entities should use Form W-8BEN if they are claiming treaty benefits or are providing the form only to claim they are a foreign person exempt from backup withholding.*

- A person acting as an intermediary . . . . . . . . . . . . . . . . . . . . . . . . . W-8IMY

Note: *See instructions for additional exceptions.*

### Part I — Identification of Beneficial Owner (See instructions.)

| 1 Name of individual or organization that is the beneficial owner | 2 Country of incorporation or organization |
|---|---|
| HERALD FUND SPC— HERALD USA SEGREGATED PORTFOLIO ONE | CAYMAN |

3 Type of beneficial owner:
☐ Individual  ☑ Corporation  ☐ Disregarded entity  ☐ Partnership  ☐ Simple trust
☐ Grantor trust  ☐ Complex trust  ☐ Estate  ☐ Government  ☐ International organization
☐ Central bank of issue  ☐ Tax-exempt organization  ☐ Private foundation

4 Permanent residence address (street, apt. or suite no., or rural route). Do not use a P.O. box or in-care-of address.
HSBC CORPORATE SERVICES LTD PO BOX 309GT, UGLAND HOUSE

City or town, state or province. Include postal code where appropriate.
SOUTH CHURCH STREET , GEORGE TOWN .

Country (do not abbreviate)
GRAND CAYMAN

5 Mailing address (if different from above)
BANK OF BERMUDA (LUXEMBOURG) SA 13 RUE GOETHE, L-2014

City or town, state or province. Include postal code where appropriate.
LUXEMBOURG

Country (do not abbreviate)
LUXEMBOURG

| 6 U.S. taxpayer identification number, if required (see instructions) ☐ SSN or ITIN ☐ EIN | 7 Foreign tax identifying number, if any (optional) |
|---|---|

8 Reference number(s) (see instructions)

### Part II — Claim of Tax Treaty Benefits (if applicable)

9 I certify that (check all that apply):
a ☐ The beneficial owner is a resident of .................... within the meaning of the income tax treaty between the United States and that country.
b ☐ If required, the U.S. taxpayer identification number is stated on line 6 (see instructions).
c ☐ The beneficial owner is not an individual, derives the item (or items) of income for which the treaty benefits are claimed, and, if applicable, meets the requirements of the treaty provision dealing with limitation on benefits (see instructions).
d ☐ The beneficial owner is not an individual, is claiming treaty benefits for dividends received from a foreign corporation or interest from a U.S. trade or business of a foreign corporation, and meets qualified resident status (see instructions).
e ☐ The beneficial owner is related to the person obligated to pay the income within the meaning of section 267(b) or 707(b), and will file Form 8833 if the amount subject to withholding received during a calendar year exceeds, in the aggregate, $500,000.

10 Special rates and conditions (if applicable—see instructions): The beneficial owner is claiming the provisions of Article ............ of the treaty identified on line 9a above to claim a .................. % rate of withholding on (specify type of income): ........................ .
Explain the reasons the beneficial owner meets the terms of the treaty article: ...................................................

### Part III — Notional Principal Contracts

11 ☐ I have provided or will provide a statement that identifies those notional principal contracts from which the income is not effectively connected with the conduct of a trade or business in the United States. I agree to update this statement as required.

### Part IV — Certification

Under penalties of perjury, I declare that I have examined the information on this form and to the best of my knowledge and belief it is true, correct, and complete. I further certify under penalties of perjury that:
- I am the beneficial owner (or am authorized to sign for the beneficial owner) of all the income to which this form relates,
- The beneficial owner is not a U.S. person,
- The income to which this form relates is not effectively connected with the conduct of a trade or business in the United States or is effectively connected but is not subject to tax under an income tax treaty, and
- For broker transactions or barter exchanges, the beneficial owner is an exempt foreign person as defined in the instructions.

Furthermore, I authorize this form to be provided to any withholding agent that has control, receipt, or custody of the income of which I am the beneficial owner or any withholding agent that can disburse or make payments of the income of which I am the beneficial owner.

**Sign Here** ►

Signature of beneficial owner (or individual authorized to sign for beneficial owner)     Date (MM-DD-YYYY)     Capacity in which acting

For Paperwork Reduction Act Notice, see separate instructions.     Cat. No. 25047Z     Form **W-8BEN** (Rev. 12-2000)