Baker & Hostetler LLP
45 Rockefeller Plaza
New York, NY 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated SIPA Liquidation*
*of Bernard L. Madoff Investment Securities LLC*
*and Bernard L. Madoff*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Adv. Pro. No. 08-01789 (BRL) |
| BERNARD L. MADOFF INVESTMENT SECURITIES LLC, | SIPA LIQUIDATION |
| Debtor. | (Substantively Consolidated) |
| IRVING H. PICARD, Trustee for the Liquidation of Bernard L. Madoff Investment Securities LLC, | |
| Plaintiff, | |
| v. | Adv. Pro. No. 09-1359 (BRL) |
| HERALD FUND SPC, *et al.*, | |
| Defendants. | |

**MEMORANDUM OF LAW IN OPPOSITION TO HERALD FUND SPC'S**
**MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

# Table of Contents

Page

BACKGROUND .................................................................................................... 1

SUMMARY OF ARGUMENT ............................................................................. 2

ARGUMENT ........................................................................................................ 5

I.      HERALD RECEIVED VOIDABLE AND RECOVERABLE TRANSFERS OF
        PROPERTY OF THE DEBTOR AS THAT TERM IS DEFINED IN SIPA –
        THERE WAS NO BAILMENT ..................................................................... 5

        A.      The Transfers to Herald Were Property of BLMIS under SIPA ........... 6

        B.      Herald's Bailment Argument Is Precluded by SIPA ......................... 10

        C.      BLMIS Was Not a Bailee of Herald under New York Law................ 11

II.     THE SECURITIES CONTRACT "SAFE HARBOR" DOES NOT PRECLUDE
        THE TRUSTEE FROM RECOVERING TRANSFERS TO HERALD ...................... 12

        A.      Herald's Proposed Interpretation of Section 546(e) Must Be Rejected As
                Inconsistent with the Purposes of that Section and the Remedial Purposes
                of SIPA ..................................................................................... 13

        B.      The Transfers Were Not Made in Connection with a "Securities Contract"
                as that Term Is Defined for Purposes of a SIPA Proceeding................ 17

III.    THE TRUSTEE SPECIFICALLY ALLEGED ACTUAL FRAUD UNDER NEW
        YORK STATE LAW ................................................................................. 18

        A.      The Second Amended Complaint Specifically Alleges Fraudulent Intent
                Pursuant to New York Debtor and Creditor Law Section 276 ............ 19

        B.      While Transferee Intent Need Not Be Alleged under New York State Law,
                the Trustee Has Amply Alleged Herald's Fraudulent Intent................ 22

IV.     THE TRUSTEE'S TURNOVER CLAIM IS STATED PROPERLY ........................ 26

V.      THE TRUSTEE PROPERLY HAS ALLEGED DISALLOWANCE OF
        HERALD'S SIPA CLAIM .......................................................................... 29

VI.     THE TRUSTEE CAN RECOVER TRANSFERS MADE TO TAX
        AUTHORITIES PURPORTEDLY ON BEHALF OF HERALD .......................... 30

VII.    HERALD'S MOTION TO DISMISS CERTAIN REQUESTED REMEDIES IN
        THIS CASE IS WITHOUT MERIT ............................................................... 33

CONCLUSION .................................................................................................... 36

## TABLE OF AUTHORITIES

## CASES

*Andre Velez Constr., Inc. v. Consol. Edison Co. of N.Y. Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262 (Bankr. S.D.N.Y. 2007) ...............................20, 21, 22, 35

*Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ....................................................................5, 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................5, 25

*Bertrum v. Laughlin (In re Laughlin)*, 18 B.R. 778 (Bankr. W.D. Mo. 1982) .................35

*Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157 (2004) ........................................27

*Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992 (S.D.N.Y. 1991) .......................20

*Daly v. Kennedy (In re Kennedy)*, 279 B.R. 455 (Bankr. D. Conn. 2002) .........................9

*Dampskibsselskabet AF 1912 v. Black & Geddes, Inc. (In re Black & Geddes, Inc.)*, 16 B.R. 148 (Bankr. S.D.N.Y. 1981) ...................................................................34

*Dodd v. U.S.*, 545 U.S. 353 (2005) ....................................................................................8

*Drenis v. Haligiannis*, 452 F. Supp. 2d 418 (S.D.N.Y. 2006)..........................................19

*ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419 (1998).....................................34

*Enron Corp. v. JP Morgan Secs., Inc. (In re Enron Corp.)*, Nos. M-47 (GBD), 01-6034 (AJG), Adv. Nos. 03-92677 (AJG), 03-92682 (AJG), 2008 WL 281972 (S.D.N.Y. Jan. 25, 2008) ...............................................................................15

*Gentry v. Kovler (In re Kovler)*, 249 B.R. 238 (Bankr. S.D.N.Y. 2000), *amended by*, 329 B.R. 17 (Bankr. S.D.N.Y. 2005).........................................................20, 21, 25

*Geron v. Schulman (In re Manshul Constr. Corp.)*, 97 Civ. 8851 (JGK), 99 Civ. 2825 (JGK), 2000 U.S. Dist. LEXIS 12576 (S.D.N.Y. Aug. 29, 2000).....................20

*Goldman v. Belden*, 754 F.2d 1059 (2d Cir. 1985) ............................................................5

*Gredd v. Bear, Stearns Secs. Corp. (In re Manhattan Inv. Fund Ltd.)*, 310 B.R. 500 (Bankr. S.D.N.Y. 2002).............................................................................14, 20, 21

*HBE Leasing Corp. v. Frank (HBE Leasing I)*, 48 F.3d 623 (2d Cir. 1995)....................20

*HBE Leasing Corp. v. Frank (HBE Leasing II)*, 61 F.3d 1054 (2d Cir. 1995) ................20

*Hill v. Spencer Savs. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.) (In re Bevill I)*, 83 B.R. 880 (D.N.J. 1988) ............................................................................. 8

*Hill v. Spencer Savs. & Loan Ass'n (In re Bevill, Bresler & Schulman, Inc.) (In re Bevill II)*, 94 B.R. 817 (D.N.J. 1989) ..................................................................... 7, 10

*Hohn v. U.S.*, 524 U.S. 236 (1998) ............................................................................. 9

*Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547 U.S. 651 (2006) ...................... 1

*In re 1634 Assocs.*, 157 B.R. 231 (Bankr. S.D.N.Y. 1993) ........................................ 32

*In re Agric. Research & Tech. Group, Inc.*, 916 F.2d 528 (9th Cir. 1990) ...................... 22

*In re Am. Tissue, Inc.*, 351 F. Supp. 2d 79 (S.D.N.Y. 2004) ........................................ 18

*In re Asia Global Crossing, Ltd.*, 333 B.R. 199 (Bankr. S.D.N.Y. 2005) ........................ 30

*In re Bayou Group LLC*, 396 B.R. 810 (Bankr. S.D.N.Y. 2008) ........................ 20, 21, 22

*In re Centennial Textiles*, 220 B.R. 165 (Bankr. S.D.N.Y. 1998) .................................... 35

*In re Grafton Partners, L.P.*, 321 B.R. 527 (B.A.P. 9th Cir. 2005) ................................ 15

*In re Gubelman*, 10 F.2d 926 (2d Cir. 1925) .............................................................. 11

*In re Integra Realty Res., Inc.*, 198 B.R. 352 (D. Colo. 1996) ...................................... 14

*In re Koreag, Controle et Revision S.A.*, 961 F.2d 341 (2d Cir. 1992) ........................... 34

*In re Mid Atl. Fund, Inc.*, 60 B.R. 604 (Bankr. S.D.N.Y. 1986) .................................... 30

*In re New Times Secs. Servs., Inc.*, 463 F.3d 125 (2d. Cir. 2006) .................................. 1

*In re OPM Leasing Servs., Inc.*, 32 B.R. 199 (Bankr. S.D.N.Y. 1983) ........................... 24

*In re Student Fin. Corp.*, 335 B.R. 539 (D. Del. 2005) ................................................ 28

*Jackson v. Mishkin (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406 (S.D.N.Y. 2001) ............................................................................................. 14, 15, 16

*Jacobs v. Jacobowitz (In re Jacobs)*, 394 B.R. 646 (Bankr. E.D.N.Y. 2008) ....... 19, 27, 28

*Jenkins v. New York City Transit Auth.*, No. 08 Civ. 6814, 2009 WL 1940103 (S.D.N.Y. July 1, 2009) ....................................................................................... 5

*Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*, 913 F.2d 846 (10th Cir. 1990)..........13

*Kothe v. R.C. Taylor Trust*, 280 U.S. 224 (1930)..............................................................2

*Le Café Creme, Ltd. v. Le Roux (In re Le Café Creme, Ltd.)*, 244 B.R. 221
   (S.D.N.Y. 2000)...................................................................................................20, 25

*Lodge 743, Int'l Ass'n of Machinists v. United Aircraft Corp.*, 337 F.2d 5 (2d Cir.
   1964)...........................................................................................................................12

*Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411 (E.D.N.Y. 2009) .............................5

*Merrill v. Abbott (In re Indep. Clearing House Co.)*, 41 B.R. 985 (Bankr. D. Utah
   1984), *rev'd on other grounds*, *Merrill v. Abbott, (In re Indep. Clearing House
   Co.)*, 77 B.R. 843 (D. Utah 1987) ...............................................................................9

*Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369
   (Bankr. S.D.N.Y. 2007)...............................................................................................21

*Ostashko v. Ostashko*, No. 00-CV-7162, 2002 WL 32068357 (E.D.N.Y. Dec. 12,
   2002)............................................................................................................................24

*Peoples Westchester Savs. Bank v. Fed. Deposit Ins. Corp.*, 961 F.2d 327 (2d Cir.
   1992)............................................................................................................................11

*Picard v. Taylor (In re Park S. Secs., LLC)*, 326 B.R. 505 (Bankr. S.D.N.Y. 2005).passim

*Powe v. Cambium Learning Co.*, No. 08-Civ-1963 (JGK), 2009 WL 2001440
   (S.D.N.Y. July 9, 2009)...............................................................................................12

*Redington v. Touche Ross & Co.*, 592 F.2d 617 (2d Cir. 1978), *rev'd on other
   grounds*, 442 U.S. 560 (1979) .....................................................................................11

*Rosenman Family, LLC v. Picard (In re Bernard L. Madoff Inv. Secs. LLC)*, 401
   B.R. 629 (Bankr. S.D.N.Y. 2009) ............................................................................8, 10

*Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007).................................................................5

*Rozsa v. May Davis Group, Inc.*, 152 F. Supp. 2d 526 (S.D.N.Y. 2001).........................11

*Secs. Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293
   (S.D.N.Y. 1999)...........................................................................................................20

*Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d
   43 (2d Cir. 2005) ...............................................................................................19, 20, 26

*Simonds v. Simonds*, 380 N.E.2d 189 (N.Y. 1978)............................................................34

*White Family Cos. v. Dayton Title Agency, Inc.*, 284 B.R. 238 (S.D. Ohio 2002) ............9

*Wider v. Wootton*, 907 F.2d 570 (5th Cir. 1990)................................................................15

*Woods & Erickson LLP v. Leonard (In re Avi, Inc.)*, 389 B.R. 721 (B.A.P. 9th Cir. 2008).................................................................................................................................27

## STATUTES

11 U.S.C. § 502(d)..........................................................................................................29, 30

11 U.S.C. § 542 ....................................................................................................................29

11 U.S.C. § 544 ..............................................................................................5, 7, 16, 26 30, 32

11 U.S.C. § 546(e)...........................................................................................................13, 16

11 U.S.C. § 547 ...........................................................................................................5, 16, 26, 30

11 U.S.C. § 547(b)...............................................................................................................7, 32

11 U.S.C. § 548 ..........................................................................................................5, 7, 26, 30

11 U.S.C. § 548(a) ..............................................................................................................16, 32

11 U.S.C. § 550 ....................................................................................................................30

11 U.S.C. § 741(7)...............................................................................................................18

15 U.S.C. § 78fff-2(c)(3) ..............................................................................................passim

15 U.S.C. § 78fff(b)........................................................................................................9, 16, 17

15 U.S.C. § 78*lll*(2) ............................................................................................................10

15 U.S.C. § 78*lll*(4) ......................................................................................................7, 8, 31

Financial Netting Improvement Act, Pub. L. No. 109-390, 120 Stat. 2692 (2006) ..........14

N.Y. Debt. & Cred. § 276 (2009) ..................................................................................19, 21

N.Y. Debt. & Cred. § 276-a (2009) ....................................................................................21

Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq* ............................................ 1

## MISCELLANEOUS

5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*
  §§ 1255, 1356 (3d ed. 2009) ...................................................................... 33

5 Collier on Bankruptcy § 550.07 (2009) ...................................................... 27

Fed. R. Civ. P. 12(b)(6) ................................................................................. 5

Fed. R. Bank. P. 7012 ................................................................................... 5

Fed. R. Civ. P. 54(c) ..................................................................................... 33

H.R. Rep. No. 97-420, at 1 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 583, 583 ........... 14

H.R. Rep. No. 109-648, Pt. 1 (2006) ............................................................ 14

Defendant Herald Fund SPC ("Herald") advances a number of novel theories in support of its motion to dismiss ("Motion") the claims brought against the fund by Irving H. Picard, Esq. (the "Trustee"), as trustee for the substantively consolidated liquidation of the business of Bernard L. Madoff Investment Securities LLC ("BLMIS") and Bernard L. Madoff ("Madoff"). Not one of those theories provides a basis for this Court to dismiss the Trustee's claims against Herald. For the purposes of this Motion, each of the Trustee's factual allegations must be accepted as true, and it is Herald's burden, as the moving party, to establish that the Trustee's allegations cannot support his claims. For the reasons set forth herein, Herald has failed to meet this burden.

## BACKGROUND

Bernard L. Madoff and others stole billions of dollars through the largest Ponzi scheme in history, which victimized thousands of investors. As this Court has recognized, the purpose of the Securities Investor Protection Act, 15 U.S.C. §§ 78aaa *et seq.* (2009) ("SIPA"), is "to protect investors against financial loss arising from the insolvency of their brokers, and reestablish investor confidence in capital markets." *Rosenman Family, LLC v. Picard* (*In re Bernard L. Madoff Inv. Secs. LLC)*, 401 B.R. 629, 633-34 (Bankr. S.D.N.Y. 2009) (Lifland, J.) (citations omitted); *see also In re New Times Secs. Servs., Inc.*, 463 F.3d 125, 127 (2d Cir. 2006); *Picard v. Taylor* (*In re Park S. Secs., LLC*), 326 B.R. 505, 517 (Bankr. S.D.N.Y. 2005) (noting the "remedial purpose" of SIPA). The purpose of the Bankruptcy Code is similar. *See Kothe v. R.C. Taylor Trust,* 280 U.S. 224, 227 (1930) ("The broad purpose of the Bankruptcy Act is to bring about an equitable distribution of the bankrupt's estate among creditors holding just demands based upon adequate consideration."); *Howard Delivery Serv., Inc. v. Zurich Am. Ins. Co.*, 547

U.S. 651, 655 (2006) (noting the Bankruptcy Code's aim of "secur[ing] equal distribution among creditors" and citing to *Kothe*, 280 U.S. at 227).

Herald's arguments for dismissing the Trustee's claims reflect Herald's disagreement with the statutory scheme governing the liquidation of BLMIS. Herald argues that, because it invested more money in BLMIS than it transferred out, it should be immune from the Trustee's attempts to recover customer property for equitable distribution among all of the investors who lost money in Madoff's Ponzi scheme. Herald received over *half a billion* dollars in transfers during the 90 days prior to the collapse of BLMIS alone, while other investors lost everything. It is the Trustee's obligation to bring actions on behalf of the BLMIS estate to recover avoidable transfers. Seeking to recover transfers of customer property—even transfers of principal—to investors in a Ponzi scheme in order to distribute recovered property to investors in accordance with the equitable principles of SIPA is an appropriate and necessary exercise of the Trustee's powers under SIPA.

The law is well-settled that the Trustee may seek recovery of transfers of customer property within the relevant periods regardless of an investor's good faith or lack of knowledge of the Ponzi scheme. Although none of the Trustee's claims require the Trustee to demonstrate that Herald acted in bad faith, Herald is not an innocent investor. Rather, the fund knew—or, at the very least, should have known—that it was benefitting from a fraud. Herald's disagreement with SIPA's statutory scheme for recovering and equitably distributing customer property is irrelevant to this Motion. The Trustee has made more than adequate factual allegations to support each of his claims, and this Court should deny Herald's Motion.

## SUMMARY OF ARGUMENT

Herald's focus on its status as a "net loser" is irrelevant to the Trustee's claims, and the fund's insistence that it was not complicit in, and did not know of, Madoff's Ponzi scheme is a

factual challenge that is not appropriately before the Court on a motion to dismiss. The Trustee has alleged facts that are more than adequate to support his claims against Herald, and Herald has not met its very high burden of establishing a lawful basis for this Court to dismiss the Trustee's claims in the Second Amended Complaint.

### *The Trustee's Avoidance Claims Are Based on Express Provisions of SIPA to which Herald's Bailment Argument Is Not Applicable*

Herald's argument that transfers from BLMIS to Herald were not transfers of property of the debtor and, therefore, not avoidable under the Bankruptcy Code ignores the express definitions in SIPA of "customer property" and "property of the debtor," under which all property transferred to or for the benefit of Herald is the property of BLMIS for the purpose of avoiding such transfers. Herald's argument, based on state bailment law, is unsupported by facts and cannot override the contrary outcome dictated by the express statutory language of SIPA.

### *The Securities Contract "Safe Harbor" Does Not Preclude Recovery of Transfers to Herald*

The so-called securities contract "safe harbor" is not applicable where, as here, no securities were traded, and avoiding and compelling recovery of transfers made would not have any effect at all—let alone a detrimental effect—on the securities market. By contrast, applying the "safe harbor" would result in preferential treatment of a select customer at the expense of other customers of BLMIS contrary to the statutory purpose and express provisions of SIPA. Moreover, Herald cannot establish as a matter of law that there exists a securities contract subject to the "safe harbor."

### *The Second Amended Complaint Properly Alleges Actual Fraud under New York State Law*

The Trustee need not allege the transferee's intent in order to state a claim for actual fraud under New York Debtor and Creditor law. Even were the transferee's intent found to be

relevant, the Second Amended Complaint adequately alleges fraudulent intent on the part of Herald.

### The Trustee's Turnover Claim Is Stated Properly

Herald's argument that the Trustee's turnover claim is not ripe until after the avoidance claims are decided ignores the express language of SIPA that the property sought by the Trustee is property of the debtor, and that the Trustee may avoid any transfer of such property if the transfer is *voidable* under the Bankruptcy Code. Herald's argument, moreover, should be denied for reasons of judicial economy.

### The Second Amended Complaint Properly Alleges Disallowance of Herald's SIPA Claim

Section 502(d) of the Bankruptcy Code requires this Court to disallow claims of entities that have received property recoverable under SIPA unless that entity has paid the amounts for which it is liable under SIPA. The Second Amended Complaint more than adequately alleges that Herald is liable for the return of recoverable property and has not returned it. It is not necessary, and would be a waste of judicial resources, to require the Trustee to assert this claim in a separate action only after the instant litigation is completed.

### The Trustee May Recover Transfers to the U.S. Treasury Made on Behalf of Herald

BLMIS' transfers to the U.S. Treasury during the relevant periods were transfers of customer property made on Herald's behalf that are avoidable and recoverable under the applicable provisions of SIPA, the Bankruptcy Code and New York Debtor and Creditor law. Herald's arguments to the contrary are based on the erroneous assumption that the transfers were tax payments. They were not. There were no securities purchased, no dividends earned and, hence, no actual tax obligations incurred. The transfers to the U.S. Treasury were simply a

necessary part of perpetuating the Ponzi scheme, and such transfers are avoidable and recoverable by the Trustee.

### *Herald's Motion to Dismiss Certain Remedies Is Without Merit*

Finally, a motion to dismiss for facial insufficiency cannot be based on the Trustee's choice of remedies sought in his prayer for relief, including a constructive trust and the return of tax refunds, both of which are justified in this action.

## ARGUMENT

A court determining whether to grant or deny a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure must analyze whether a complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[1] *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell At. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. "The Court's function on a motion to dismiss is 'not to weigh the evidence that might be presented at a trial but merely to determine whether the complaint itself is legally sufficient.'" *Jenkins v. New York City Transit Auth.*, No. 08 Civ. 6814, 2009 WL 1940103, at *1 (S.D.N.Y. July 1, 2009) (quoting *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

## I. HERALD RECEIVED VOIDABLE AND RECOVERABLE TRANSFERS OF PROPERTY OF THE DEBTOR AS THAT TERM IS DEFINED IN SIPA – THERE WAS NO BAILMENT

All transfers from BLMIS to or for the benefit of Herald were transfers of property of BLMIS and are voidable and recoverable under SIPA and the Bankruptcy Code. *See* 15 U.S.C. § 78fff-2(c)(3); 11 U.S.C. §§ 544, 547, 548. Herald's argument to the contrary, based on a theory

---

[1] Federal Rule of Civil Procedure 12(b)(6) is incorporated by the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 7012(b).

that BLMIS was a bailee, is inconsistent with express provisions of SIPA.[2]  SIPA defines "property of the debtor" for SIPA proceedings.  Therefore, the cases cited by Herald that define "property of the debtor" for ordinary bankruptcy proceedings are inapposite.  *See* Memorandum of Law in Support of Herald Fund SPC's Motion to Dismiss the Second Amended Complaint ("Herald Brief") 8-10.  Herald's argument is inconsistent with SIPA's definition of "property of the debtor" and must fail.  Finally, even were state bailment law applicable, the claimed arrangement would not be a bailment under New York state law.

### A.    The Transfers to Herald Were Property of BLMIS under SIPA

All of the transfers from BLMIS to or for the benefit of Herald were transfers of property of BLMIS that the Trustee may avoid under SIPA and sections 544, 547 and 548 of the Bankruptcy Code.  The Trustee's power to avoid and recover transfers by BLMIS to Herald is set forth in section 78fff-2(c)(3) of SIPA, which provides:

> Whenever customer property is not sufficient to pay in full the claims [submitted to the trustee], the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable under the provisions of Title 11 [of the Bankruptcy Code].   Such recovered property shall be treated as customer property.   *For purposes of such recovery, the property so transferred shall be deemed to have been the property of the debtor* and, if such transfer was made to a customer or for his benefit, such customer shall be deemed to have been a creditor, *the laws of any State to the contrary notwithstanding*.

15 U.S.C. § 78fff-2(c)(3) (emphases added).

---

[2] Herald argues that the Customer Agreement between Herald Fund and BLMIS, which is extrinsic to the Trustee's complaint, should be considered by the Court when deciding this Motion.  Herald Brief at 9-10 n.2.  This argument is repudiated by recent case law.  In the context of a motion to dismiss, the Second Circuit emphasized that a court should consider a document not attached or incorporated by reference to the complaint only if the complaint "solely" relied upon the document and the document was "*integral to the complaint*."  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original); *see also Mathis v. United Homes, LLC*, 607 F. Supp. 2d 411, 419 (E.D.N.Y. 2009) (declining to consider documents not attached or incorporated by reference, and upon which the complaint did not solely rely).  The Trustee's citation to the Customer Agreement, which occurred twice in order to establish jurisdiction, was too limited in number and scope to merit review by this Court in considering this Motion.

The Bankruptcy Code, referenced in section 78fff-2(c)(3), allows the Trustee to avoid transfers of property of a debtor. *See* 11 U.S.C. §§ 544, 547(b), 548(a). By its plain language, section 78fff-2(c)(3) defines "property of the debtor" to mean all property transferred by a debtor that was "customer property" of the debtor prior to the transfer. *In re Park South*, 326 B.R. at 512 (SIPA "specifically defines a [d]ebtor's 'interests in property' to include property that was previously transferred from a customer's account."). Section 78fff-2(c)(3) thereby "reliev[es] the trustee from having to prove that the property belonged to the debtor's estate." *Id.* at 512-13 (citing *Hill v. Spencer Savs. & Loan Ass'n* (*In re Bevill, Bresler & Schulman, Inc.*) (*In re Bevill II*), 94 B.R. 817, 825-26 (D.N.J. 1989)). Read in tandem, section 78fff-2(c)(3) of SIPA and applicable provisions of the Bankruptcy Code permit a trustee to avoid and recover transfers of "customer property" of a debtor, as that term is defined in SIPA. *See id.*; *In re Bevill II*, 94 B.R. at 826. Accordingly, to avoid and recover transfers from BLMIS to Herald, the Trustee need only prove that, prior to transfer, the property transferred to Herald was "'customer property' [of BLMIS] as defined by SIPA." *In re Bevill II*, 94 B.R. at 826; *In re Park South*, 326 B.R. at 512-13. The Trustee's allegations meet this standard.

SIPA defines "customer property" as "*cash* and securities . . . at any time *received, acquired, or held* by or for the account of a debtor from or *for the securities accounts of a customer*.*" 15 U.S.C. § 78*lll*(4) (emphases added). Because BLMIS was a Ponzi scheme, all of the money involved was, at some point, provided by customers and held by BLMIS for the securities accounts of customers, including Herald. *See* Second Amended Compl. ¶¶ 18, 29, 31. Accordingly, *all funds held and subsequently transferred* by BLMIS were and are "customer property" under SIPA, irrespective of when or to whom the transfers were made. *Id.* at ¶ 38; 15 U.S.C. §§ 78*lll*(4), 78fff-2(c)(3).

In the case of Herald, as soon as the funds invested by Herald were received by BLMIS, the funds became "customer property" under SIPA and remained "customer property" irrespective of subsequent transfers to or for the benefit of Herald. *See Rosenman*, 401 B.R. at 635-36 (finding that "funds wired by [a customer of BLMIS] constitute Customer Property as defined by SIPA."); 15 U.S.C. §§ 78*lll*(4), 78fff-2(c)(3). It follows, by operation of section 78fff-2(c)(3), that the transfers to Herald were transfers of property of the debtor, BLMIS, and that such transfers are voidable by the Trustee as preferences and actually fraudulent transfers under sections 544, 547 and 548 of the Bankruptcy Code. *See* 15 U.S.C. § 78fff-2(c)(3); *In re Park South*, 326 B.R. at 512-513.

Herald's argument to the contrary overlooks the fundamental point that BLMIS is in liquidation under SIPA and, hence, different from ordinary bankruptcies. *See In re Park South*, 326 B.R. at 513; *Hill v. Spencer Savs. & Loan Ass'n* (*In re Bevill, Bresler & Schulman, Inc.*) (*In re Bevill I*), 83 B.R. 880, 886 (D.N.J. 1988) (noting that a proceeding under SIPA is "uniformly recognized" as a "bankruptcy liquidation remodeled to achieve the special purposes of SIPA."). Were Herald's argument to be accepted, it would have extraordinary and unprecedented effect, vitiating the SIPA's statutory scheme and the authority it gives to the Trustee. It would prevent not only the Trustee in this case, but other trustees in almost all SIPA proceedings, from avoiding preferential and fraudulent transfers, leaving the Trustee powerless to fulfill his statutory obligation to recover customer property and distribute it equitably.

Accepting Herald's argument would require this Court to construe the interaction between SIPA and the Bankruptcy Code in such a way as to thwart the purpose of SIPA — a construction that Congress explicitly forbade.[3] SIPA incorporates a number of the provisions of

---

[3] Such a result would violate a basic canon of statutory construction that statutory provisions should not be interpreted in such as way as to make other provisions ineffective. *See Dodd v. U.S.*, 545 U.S. 353, 371 (2005) ("It

the Bankruptcy Code, but the Code is applicable in a SIPA proceeding only to "the extent [it is] consistent with the provisions of" SIPA. 15 U.S.C. § 78fff(b).

SIPA provides a different definition of the property of a debtor's estate than does the Bankruptcy Code. *See* 15 U.S.C. § 78fff-2(c)(3). It is SIPA's definition—and not the definition used in ordinary bankruptcy proceedings—that is applicable in this case. *See In re Park South*, 326 B.R. at 513. The various cases cited by Herald can provide no guidance in determining property of the BLMIS estate because they do not involve liquidation proceedings under SIPA.[4] *See* Herald Brief at 8-9.

Bankruptcy Courts presiding over SIPA proceedings have acknowledged differences between SIPA proceedings and ordinary bankruptcy proceedings. For example, in *In re Park South*, the defendants challenged the Trustee's ability to maintain fraudulent transfer claims on the ground that the transfers at issue had been made from customer accounts, as opposed to the debtor's own accounts, and therefore did not constitute transfers of "an interest of the debtor in property." 326 B.R. at 512. In support of their argument, the defendants—like Herald—relied on cases involving bankruptcies under Chapter 7 of the Bankruptcy Code in which courts analyzed section 541 of the Bankruptcy Code to determine whether the property at issue was property of the bankruptcy estate. *Id.* at 513 (citing *White Family Cos. v. Dayton Title Agency, Inc.*, 284 B.R. 238 (S.D. Ohio 2002), and *Daly v. Kennedy* (*In re Kennedy*), 279 B.R. 455 (Bankr. D. Conn. 2002)). The Bankruptcy Court for the Southern District of New York discounted these cases and the defendants' argument, stating that the definition of "property of

---

is, of course, a basic canon of statutory construction that we will not interpret a congressional statute in such a manner as to effectively nullify an entire section."); *Hohn v. U.S.*, 524 U.S. 236, 249 (1998) (stating the Court's reluctance "to adopt a construction [of one statutory provision that makes] another statutory provision superfluous.").

[4] However, even in ordinary bankruptcy proceedings "[f]unds obtained from investors in a 'Ponzi' scheme are property [of the debtor], and are as susceptible of preferential and fraudulent disposition as other property." *Merrill*

the debtor" provided for in section 78fff-2(c)(3) was the pertinent definition. *Id.* Here, the

liquidation of BLMIS is a proceeding under SIPA and the definition of property of the debtor

articulated in section 78fff-2(c)(3) is controlling.

## B. Herald's Bailment Argument Is Precluded by SIPA

Herald's contention that BLMIS was a bailee of Herald, such that the property transferred

to Herald was not property of BLMIS, is contrary to law. *See Rosenman*, 401 B.R. at 635-36

(finding that "funds wired by [a customer of BLMIS] constitute Customer Property as defined by

SIPA."). The very existence of a bailor-bailee relationship between Herald and BLMIS is

precluded as a matter of law. SIPA expressly deems Herald — a "customer" of BLMIS — to be

a creditor of BLMIS entitled only to its equitable share of customer property that the Trustee is

able to recover. 15 U.S.C. §§ 78lll(2), 78fff-2(c)(3) ("if [a] transfer was made to a customer or

for his benefit, such customer shall be deemed to have been a creditor" of the debtor); *In re

Bevill II*, 94 B.R. at 825-26. Because Herald was a customer of BLMIS and received transfers

that were apparently for its benefit, Herald is a creditor—not a bailor—of BLMIS. *See* 15

U.S.C. § 78fff-2(c)(3); Second Amended Compl. ¶¶ 29, 33-34. New York bailment law is

inapposite because it is preempted by section 78fff-2(c)(3) of SIPA, which controls irrespective

of state law. 15 U.S.C. § 78fff-2(c)(3) ("the laws of any State to the contrary notwithstanding").

In short, SIPA deems Herald to be a creditor of BLMIS, and Herald's argument that BLMIS was

a bailee of Herald is inconsistent with the plain language of SIPA.

---

*v. Abbott (In re Indep. Clearing House Co.),* 41 B.R. 985, 999 (Bankr. D. Utah 1984), rev'd on other grounds,
*Merrill v. Abbott (In re Indep. Clearing House Co.)*, 77 B.R. 843 (D. Utah 1987).

## C.    BLMIS Was Not a Bailee of Herald under New York Law

Even if New York bailment law had any bearing on this issue—and it does not—BLMIS was not a bailee of Herald under New York state law.[5]  To create a bailment of money under New York law, the parties must (1) have an express or implied bailment agreement; and (2) create "a special or specific bank account" wherein "title to the funds remains with the account holder[] and the funds are separated from the other deposits."  *Rozsa v. May Davis Group, Inc.*, 152 F. Supp. 2d 526, 532-33 (S.D.N.Y. 2001) (citing *Peoples Westchester Savs. Bank v. Fed. Deposit Ins. Corp.*, 961 F.2d 327, 330 (2d Cir. 1992)).  "Whether an account is general or specific depends upon the mutual intent of the parties," but "[a]bsent evidence of intent, New York law presumes that deposits are general rather than specific."  *Id.* (internal citations omitted).  Moreover, in the case of a broker/advisor, like BLMIS, and an investor, like Herald, it is presumed that there is no bailor-bailee relationship because the "investor does not seek to have the exact same funds returned after depositing them with a clearing broker."  *Id.* at 532; *cf. In re Gubelman*, 10 F.2d 926, 930 (2d Cir. 1925) (stating the well-accepted principle that the relationship between a bank and its customer is "the ordinary relation of debtor and creditor").  Due to the nature of the relationship between a broker/advisor and an investor, a "broker's consent to an [express or] implied contract is fundamental to finding that it accepted bailment of an investor's funds" and, in the absence of a written agreement, it is the burden of the party asserting a bailment to establish that the parties had an implied agreement with definite terms.  *Rozsa*, 152 F. Supp. 2d at 533.

---

[5] The question whether BLMIS was a bailee of Herald is distinct from case law indicating that under certain circumstances a SIPA trustee has rights as a bailee to maintain causes of action against third parties on behalf of customers.  *See Redington v. Touche Ross & Co.*, 592 F.2d 617, 625 (2d Cir. 1978), *rev'd on other grounds*, 442 U.S. 560 (1979).

There is no written, express bailment agreement in this case. Herald appears to be arguing that the customer agreement implies the existence of a bailor-bailee relationship. However, even were the customer agreement properly before the Court on this Motion, the Trading Authorization, another extrinsic document which Herald urges the Court to consider, refutes any such implication. The Trading Authorization states that Madoff was authorized to buy, sell and trade securities for Herald's account, which would make it impossible for the exact same funds deposited to be returned—a *sine qua non* for a bailment.

At most, Herald's argument raises questions of fact that cannot be determined on a motion to dismiss. *See Lodge 743*, *Int'l Ass'n of Machinists v. United Aircraft Corp.*, 337 F.2d 5, 8 (2d Cir. 1964) (finding that arguments regarding the parties' intent in entering into an agreement raise "questions of fact as to the circumstances of the agreement that cannot be dealt with on a motion to dismiss"); *Powe v. Cambium Learning Co.*, No. 08-Civ-1963 (JGK), 2009 WL 2001440, at *5 (S.D.N.Y. July 9, 2009) (stating that the "meaning of an ambiguous contract is a question of fact for the fact-finder," and determining that the validity of the defendant's argument regarding the meaning of the agreement at issue had to be "tested against the factual record that" would be developed such that the Court could not dispose of the plaintiff's claims on the motion to dismiss).

## II. THE SECURITIES CONTRACT "SAFE HARBOR" DOES NOT PRECLUDE THE TRUSTEE FROM RECOVERING TRANSFERS TO HERALD

Section 546(e) of the Bankruptcy Code does not bar the preference or state law actual fraud claims asserted by the Trustee.[6] That section provides:

> Notwithstanding sections 544, 545, 547, 548(a)(1)(B), and 548(b) of this title, the trustee may not avoid a transfer that is a margin payment, . . . or a settlement

---

[6] Section 546(e) on its face does not apply to the Trustee's actual fraud claims under section 548(a)(1)(A) of the Bankruptcy Code because that section is not listed in the notwithstanding clause of section 546(e).

payment . . . or that is a transfer made by or to (or for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7) . . . that is made before the commencement of this case, except under section 548(a)(1)(A) of this title.

11 U.S.C. § 546(e). Herald argues that this "safe harbor" applies in this case because the transfers the Trustee seeks to avoid were made in connection with a securities contract. That argument must fail because it requires an interpretation that (a) would be unnecessary to fulfill the purposes of section 546(e); (b) would be inconsistent with SIPA; and (c) effectively would eliminate a SIPA trustee's powers to avoid preferences and constructively fraudulent transfers in almost all cases, a result directly contrary to SIPA's statutory scheme and purpose. Furthermore, the transfers to Herald were not made "in connection with a securities contract" as that term is defined for purposes of SIPA proceedings.[7]

### A.    Herald's Proposed Interpretation of Section 546(e) Must Be Rejected As Inconsistent with the Purposes of that Section and the Remedial Purposes of SIPA

An examination of the purposes of section 546(e) makes it clear that it has no application in a Ponzi scheme. The "safe harbor" provided by the provision is an exception to the public policy underlying the avoidance provisions of the Bankruptcy Code, which are intended to prevent a debtor from diminishing funds that are generally available for distribution to creditors. *See Kaiser Steel Corp. v. Charles Schwab & Co., Inc.*, 913 F.2d 846, 849 (10th Cir. 1990). The rationale for the "safe harbor" involves maintaining stability in the securities market. Specifically, the legislative intent behind section 546(e) was "to minimize the displacement

---

[7] Nor does section 546(e) of the Bankruptcy Code otherwise bar the Trustee's preference or state law actual fraud claims. As Herald concedes in its Motion, the transfers from BLMIS to Herald were neither "margin payments" nor "settlement payments" covered by section 546(e). *See* Herald Brief at 12-13. Indeed, the definitions of these terms, and the way in which they are used in section 546(e), limit them to the types of transactions that involve a payment to a clearinghouse or similar institution for the purchase of a security. The terms do not include transfers of proceeds of a Ponzi scheme from a broker to a customer.

caused in the commodities and securities markets in the event of a major bankruptcy involving those industries." H.R. Rep. No. 97-420, at 1 (1982), *as reprinted in* 1982 U.S.C.C.A.N. 583, 583; *Gredd v. Bear, Stearns Secs. Corp.* (*In re Manhattan Inv. Fund Ltd.*), 310 B.R. 500, 513 (Bankr. S.D.N.Y. 2002); *In re Integra Realty Res., Inc.*, 198 B.R. 352, 356 (D. Colo. 1996). The goal of section 546(e) is to preserve the stability of settled transactions to the extent they are not actually fraudulent. *Jackson v. Mishkin* (*In re Adler, Coleman Clearing Corp.*), 263 B.R. 406, 477 (S.D.N.Y. 2001). If settled transactions could be reversed, it would undermine confidence in the system of guarantees and could lead to the "ripple effect" of bankruptcy filings by other participants in the chain of guarantees. *Id.*

None of these concerns are implicated in the instant case. Avoidance of the transfers from BLMIS to or for the benefit of Herald would have absolutely no impact on the commodities and securities market because no securities were purchased by BLMIS on behalf of Herald. *See* Second Amended Compl. ¶¶ 18-21. There are simply no settled transactions to disturb. There will be no "displacement" in the markets, nor will there be an undermining of guarantees that could lead to a "ripple effect" of bankruptcy filings by other participants in the market. Accordingly, there is no supportable rationale for allowing Herald to circumvent and undermine one of the core foundations of the Bankruptcy Code and SIPA—that is, the equitable distribution of assets of all similarly-situated creditors.

The "securities contract" clause is a relatively recent addition to section 546(e), and there are few cases construing the clause.[8] However, the legislative history of this clause does not indicate any intention to alter the underlying purpose of section 546(e). *See* H.R. Rep. No. 109-

---

[8] The Financial Netting Improvements Act of 2006 amended section 546(e) by, *inter alia*, inserting "or that is a transfer made by or to (of for the benefit of) a commodity broker, forward contract merchant, stockbroker, financial institution, financial participant, or securities clearing agency, in connection with a securities contract, as defined in section 741(7) . . . ." Pub. L. No. 109-390, 120 Stat. 2692 (2006).

648, Pt. 1 (2006). Therefore, prior case law examining the purpose of section 546(e) remains instructive in interpreting the "securities contract" language. For example, in determining whether a particular transaction should be considered a "settlement payment," courts have focused consistently on the fact that section 546(e) was designed to protect public markets. *In re Adler,* 263 B.R. at 478-80; *In re Grafton Partners, L.P.*, 321 B.R. 527, 539 (B.A.P. 9th Cir. 2005). In that context, "[t]he few decisions that involve outright illegality or transparent manipulation reject [section] 546(e) protection." *In re Grafton*, 321 B.R. at 539; *Wider v. Wootton*, 907 F.2d 570, 572-73 (5th Cir. 1990); *In re Adler*, 263 B.R. at 478-80; *see also Enron Corp. v. JP Morgan Secs., Inc.* (*In re Enron Corp.*), Nos. M-47 (GBD), 01-6034 (AJG), Adv. Nos. 03-92677(AJG), 03-92682(AJG), 2008 WL 281972, at *5 (S.D.N.Y. Jan. 25, 2008) ("Where transactions are not merely unorthodox, but rather are fundamentally tainted by misconduct or impropriety," safe harbor protection is contrary to the objectives of section 546(e) and undermines the spirit of the Bankruptcy Code "by allowing a few individuals to reap the preferential benefit of the transfers, thereby diminishing the available assets for equitable distribution.").

In *Wider*, the court considered an earlier version of the provision at issue in the context of a Ponzi scheme. The court held that to allow the transfers in question to have the protection of the section "would lend judicial support to 'Ponzi' schemes by rewarding early investors at the expense of later victims." 907 F.2d at 573. Similarly, in *In re Adler*, a trustee appointed pursuant to SIPA was able to avoid constructively fraudulent transfers to creditors, notwithstanding section 546(e). The trustee sought to avoid certain stock trades made by an introducing broker dealer in the weeks preceding the commencement of a SIPA liquidation that had been made in an attempt to gain a larger recovery from SIPC for certain preferred customers.

The District Court, after noting that it was appropriate to consider the policy and overall scheme underlying the Bankruptcy Code and SIPA, held that section 546(e) could not protect the transfers and stated:

> Protecting the claims of a few customers at the expense of the many other creditors under the circumstances surrounding the case would not inspire confidence in the capital markets. [Rather, i]t would give a blessing to an introducing broker's massive, integrated scheme specifically intended to defraud its clearing house and SIPC and to benefit selected customers.

*In re Adler*, 263 B.R. at 482-83.

The same conclusion is warranted here to avoid preferring one investor over others, which would run afoul of the equitable principles of SIPA. Permitting Herald to wedge itself into the protection afforded by the "safe harbor" would allow it to benefit unfairly from Madoff's Ponzi scheme. The unfairness of such a windfall would be particularly manifest here because allowing Herald to keep the over half a billion dollars that it received during the preference period would significantly diminish the assets available to the Trustee for equitable distribution to *all* customers of BLMIS who were harmed by the fraud. Such a result would be in direct conflict with the principles underlying SIPA, and section 546(e) should not be so construed.

Furthermore, construing section 546(e) in the manner urged by Herald is not consistent with congressional intent and would, in fact, lead to an absurd result. Were the safe harbor interpreted to apply in this case, the loophole created would eliminate the majority of the avoidance powers granted to the Trustee under SIPA and negate the remedial purpose of SIPA's (and as incorporated by SIPA the Bankruptcy Code's) provisions for avoiding preferential and constructively fraudulent transfers. *See* 15 U.S.C. §§ 78fff(b), 78fff-2(c)(3); 11 U.S.C. §§ 544, 546(e), 547, 548(a)(1)(B). SIPA was created to protect investors in securities, or in this case

purported securities. Were the presence of a purported securities contract sufficient to trigger the safe harbor in SIPA cases, then, other than in cases of actual fraud, no transfers of customer property could be recovered for equitable distribution, and SIPA's remedial purpose would be thwarted. In this case, for example, the Trustee would be prevented from recovering *any* preference or state law fraudulent transfers.[9] Such a severe limitation of the Trustee's avoidance powers is an absurd result that Congress cannot have intended.

In any event, assuming, *arguendo*, that Herald's proposed interpretation of section 546(e) is correct, then that section would be inconsistent with SIPA and inapplicable here. *See* 15 U.S.C. § 78fff(b). SIPA incorporates by reference provisions of the Bankruptcy Code, but only to the extent that those provisions are consistent with SIPA. *Id.* The corollary to this provision is that inconsistent provisions of the Bankruptcy Code are not incorporated by SIPA and do not apply. Consequently, even were Herald's argument correct, it would render section 546(e) inconsistent with SIPA, and the "safe harbor" provision still would be inapplicable in this case.

**B.** **The Transfers Were Not Made in Connection with a "Securities Contract" as that Term Is Defined for Purposes of a SIPA Proceeding**

Herald asserts that the preferential payments it received from BLMIS fall into the "safe harbor" provided by section 546(e) of the Bankruptcy Code because the transfers were made "in connection with a securities contract." Herald Brief at 11-13. However, the only document that Herald claims constitutes a "securities contract" is the Trading Authorization. *Id.* at 11-12. Even were the Trading Authorization properly before the Court, it does not meet the definition of "securities contract" referenced in section 546(e). A "securities contract" for purposes of section 546(e) is defined in section 741(7) of the Bankruptcy Code. 11 U.S.C. § 741(7)(A). The

---

[9] This case also involves section 548(a)(1)(A)—actual fraud—which is not one of the sections listed in the notwithstanding clause of section 546(e).

Trading Authorization does not fit into any of the enumerated categories of "securities contract" provided for in section 741(7). The closest would appear to be a "master agreement," described in subsection 741(7)(A)(x). But that subsection requires sub-agreements or transactions that themselves fit within one of the other categories of "securities contract" listed in section 741(7)(A). Even if the Trading Authorization were to be considered a "master agreement," there were no sub-agreements or transactions that would constitute a "securities contract" under any of the other enumerated categories. *See* 11 U.S.C. § 741(7)(A)(i)-(ix). The transactions in question—the transfers received from BLMIS—were proceeds of a Ponzi scheme, not proceeds from the sale of securities. As such, the transfers are outside of the protection of the "safe harbor," and are avoidable and recoverable by the Trustee.[10]

III. **THE TRUSTEE SPECIFICALLY ALLEGED ACTUAL FRAUD UNDER NEW YORK STATE LAW**

Herald argues, in Part III of the brief in support of its Motion, that the Trustee's claim of actual fraud under New York state law should be dismissed because the Trustee has not adequately pleaded *Herald's* actual fraudulent intent. Herald Brief at 13-16. This argument fails because the only fraudulent intent that the Trustee must allege and prove under section 276 of New York state law is that of the *transferor*, here, BLMIS, not that of Herald. It is undisputed—and the Trustee has alleged specific facts—that BLMIS was engaged in a Ponzi scheme.[11]

---

[10] At best, Herald's claim that the Trading Authorization is a securities contract requires an extensive factual examination that cannot be performed in connection with a motion to dismiss. There are factual issues as to whether the transfers were made pursuant to a securities contract and whether that contract is of a type that should be protected by section 546(e). *See In re Am. Tissue, Inc.*, 351 F. Supp. 2d 79, 107 (S.D.N.Y. 2004) (denying motion to dismiss because factual issues existed regarding whether transfers at issue would result in the disruption of the securities market, or whether the transactions implicated participants in the system of intermediaries and guarantees such that there was the potential for an adverse impact on the functioning of the market if any of the guarantees in the chain were invoked).

[11] Herald agrees, noting in the first sentence of its brief that "[b]y now, the whole world is familiar with the massive Ponzi scheme operated by Bernard L. Madoff over decades through his business, Bernard L. Madoff Investment Securities LLC ("BLMIS")." Herald Brief at 1.

Second Amended Compl. ¶¶ 11, 16-24.  Consequently, that BLMIS had actual intent to hinder,

delay or defraud its creditors is established and fraudulent intent specifically pleaded.  To the

extent that there is a question whether the *transferee's* fraudulent intent also must be alleged

under New York law, such intent is established by the Trustee's factual allegations in support of

his claim that Herald knew or should have known that it was benefiting from a fraud, whether a

Ponzi scheme or some other type of fraudulent activity.

### A. The Second Amended Complaint Specifically Alleges Fraudulent Intent Pursuant to New York Debtor and Creditor Law Section 276

Section 276 of the New York Debtor and Creditor Law provides that "[e]very

conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or

defraud either present or future creditors" is fraudulent and may be avoided.  N.Y. Debt. & Cred.

§ 276 (2009).  "To prove actual fraud under [section] 276, a creditor must show intent to defraud

on the part of the transferor.  Where actual intent is proven, the conveyance will be set aside

regardless of the adequacy of the consideration given."  *Sharp Int'l Corp. v. State St. Bank & Trust Co. (In re Sharp Int'l Corp.),* 403 F.3d 43, 56 (2d Cir. 2005) (citations and internal

quotation marks omitted); *see also Jacobs v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 658

(Bankr. E.D.N.Y. 2008).  The Trustee's allegations that BLMIS was perpetrating a Ponzi scheme

are sufficient to establish the transferor's fraudulent intent with the particularity required by

Federal Rule of Civil Procedure Rule 9(b) and, thus, to state a claim pursuant to section 276 of

New York Debtor and Creditor law.  *See, e.g.*, *Drenis v. Haligiannis*, 452 F. Supp. 2d 418, 426

(S.D.N.Y. 2006).

Notwithstanding the binding precedent from *In re Sharp*, quoted above, there is a line of

lower court cases—largely predating that precedent—stating that a plaintiff under section 276 of

New York Debtor and Creditor law must allege fraudulent intent on the parts of both the

transferor and the transferee. *See, e.g.*, *Andre Velez Constr., Inc. v. Consol. Edison Co. of N.Y. Inc. (In re Andrew Velez Constr., Inc.)*, 373 B.R. 262, 276 (Bankr. S.D.N.Y. 2007); *In re Park South*, 326 B.R. at 517; *In re Manhattan Inv. Fund*, 310 B.R. at 505. These cases requiring transferee intent, however, "are in direct conflict with governing decisions in this Circuit holding that only the intent of the transferor is relevant under Section 276." *In re Bayou Group LLC*, 396 B.R. 810, 826-27 n.5 (Bankr. S.D.N.Y. 2008) (listing cases). The Second Circuit, having already stated in dicta that the relevant intent under section 276 is the intent of the transferor, *see HBE Leasing Corp. v. Frank* (*HBE Leasing II*), 61 F.3d 1054, 1059 n.5 (2d Cir. 1995), clarified in *In re Sharp* that, if intent "on the part of the transferor" is shown, then the conveyance will be set aside pursuant to section 276. *In re Sharp*, 403 F.3d. at 56; *see also Geron v. Schulman* (*In re Manshul Constr. Corp.*), 97 Civ. 8851 (JGK), 99 Civ. 2825 (JGK), 2000 U.S. Dist. LEXIS 12576, at *129 (S.D.N.Y. Aug. 29, 2000); *Crowthers McCall Pattern, Inc. v. Lewis*, 129 B.R. 992, 999 (S.D.N.Y. 1991); *Le Café Crème, Ltd. v. Le Roux* (*In re Le Café Crème, Ltd.*), 244 B.R. 221, 239 (S.D.N.Y. 2000); *Secs. Investor Protection Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 318 (S.D.N.Y. 1999).

Herald's mistaken contention that the Trustee must establish fraudulent intent on the transferee's part ultimately rests on a single case, which Herald neglects to cite, that in relevant part has since been discredited, *Gentry v. Kovler* (*In re Kovler*), 249 B.R. 238 (Bankr. S.D.N.Y. 2000), *amended by*, 329 B.R. 17 (Bankr. S.D.N.Y. 2005). The Court reopened *In re Kovler* for the very purpose of correcting it, acknowledging that "the Court mistakenly misattributed a quote and misstated the propositions for which several cases stand" and stating that, "because these errors misstate and misquote decisions of other courts, they should be corrected." 329 B.R. at 18. The Court proceeded to delete from its prior opinion the sentence that read "[m]utual

fraudulent intention on the part of both parties to the transaction is required . . . ." *Id.* at 18. Thus, as corrected, *In re Kovler* no longer states that mutual fraudulent intent is required to recover an actual fraudulent transfer under section 276. *See id.* Every case cited by Herald ultimately relies on the flawed, and subsequently corrected, statement in *In re Kovler.* *See* Herald Brief at 13-14.[12] Paring away Herald's flawed authority, controlling precedent unequivocally establishes that the Trustee need not allege transferee intent and has pleaded his claim properly under section 276 of the New York Debtor and Creditor law.

The plain language of section 276 supports the conclusion that transferee intent should not be required. Section 276 provides that a conveyance is fraudulent if it is "*made . . . with actual intent*" to hinder, delay or defraud present or future creditors. N.Y. Debt. & Cred. § 276 (emphasis added). There is no reference to transferee intent. *Id.*; *see In re Bayou*, 396 B.R. at 827 n.5 (noting that transfer is "made" by the transferor). By contrast, section 276-a of New York Debtor and Creditor law, which governs the award of attorneys' fees in an action to set aside a fraudulent conveyance, provides for attorneys' fees when a conveyance is found to have been "made by the debtor *and received by the transferee* with actual intent . . . to hinder, delay or defraud either present or future creditors." N.Y. Debt. & Cred. § 276-a (emphasis added). Section 276-a demonstrates that when the state legislature intended to require transferee intent it knew how to do so. It therefore appears that the omission of any reference to transferee intent in section 276 was deliberate, and that the Trustee need only allege and prove the intent of the transferor, here, BLMIS, in order to prevail on a claim of actual fraud under New York state law.

---

[12] Citing *In re Andrew Velez Constr.*, 373 B.R. at 276; *Nisselson v. Softbank AM Corp.* (*In re MarketXT Holdings Corp.*), 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007); *In re Park South*, 326 B.R. at 517; *In re Manhattan Inv. Fund*, 310 B.R. at 508. *In re Manhattan Investment Fund* makes no holding with respect to section 276 and cites *In re Kovler*, in *dicta*, for a statement regarding the transferee's intent, and *In re Park South* merely cites to *In re Manhattan Investment Fund.* 310 B.R. at 508; 326 B.R. at 517. *In re MarketXT*, in turn, relies solely on *In re Park South* and *In re Manhattan Investment Fund.* 361 B.R. at 395-96. Similarly, *In re Andrew Velez Construction* made

Herald does not challenge the sufficiency of the Trustee's allegations that BLMIS was engaged in a Ponzi scheme, or that the transfers at issue were made in the course of the scheme "with the actual intent to hinder, delay, and defraud some or all of BLMIS' then existing or future creditors." Second Amended Compl. ¶ 58; *see* Herald Brief at 13-16. To the contrary, Herald unequivocally accepts the validity of the allegations. In the very first sentences of its brief, Herald pronounces that Madoff was running "a massive Ponzi scheme" and "confessed to fraud in December 2008." Herald Brief at 1. Herald paints itself as just another investor and victim of the scheme, but in so doing concedes that the payments to it were prototypical payments in the course of a fraudulent Ponzi scheme. *See, e.g., In re Agric. Research and Tech. Group, Inc.*, 916 F.2d 528, 536 (9th Cir. 1990) ("Distributing funds to earlier investors from the receipt of monies from later investors is the hallmark of Ponzi schemes."). Accordingly, the Trustee has stated a claim pursuant to section 276 of New York Debtor & Creditor law for each of the identified transfers. The Trustee has no burden to allege Herald's intent. *See, e.g., In re Bayou*, 396 B.R. at 826-27 (noting that cases which require proof of a transferee's intent "are in direct conflict with governing decisions in [the Second Circuit] holding that only the intent of the transferor is relevant under Section 276.")

**B.      While Transferee Intent Need Not Be Alleged under New York State Law, the Trustee Has Amply Alleged Herald's Fraudulent Intent**

Even were the Trustee required to allege fraudulent intent on the part of the transferee, he has done so here. Herald was not—or, at the very least, should not have been—taken in by Madoff. The Second Amended Complaint alleges that Herald was a sophisticated investor that was on notice of, but failed to make sufficient inquiry into, the following indicia of irregularity:

---

no holding with respect to section 276 and relied, in *dicta*, on *In re Park South* and *In re MarketXT*. 373 B.R. at 276.

- Herald's account reported consistent and unusual rates of return that were too good to be true and could not be replicated by other fund managers that employed the same trading strategy purportedly used by BLMIS.

- Financial industry trade reports and a widely-read industry newsletter raised serious questions about the legitimacy of BLMIS and its ability to achieve reported returns using the trading strategy purportedly used by BLMIS.

- Madoff avoided providing any sort of transparency into his operations and consistently provided vague answers to questions about his investment approach.

- BLMIS did not provide electronic real-time online access to customer accounts, which was and is customary in the industry.

- BLMIS used outmoded technology, such as paper confirmations of trades that could be created after the fact, which was critical to Madoff's ability to perpetuate his Ponzi scheme.

- BLMIS simultaneously served as the investment manager and custodian of securities, which eliminated another frequently used check and balance in investment management by excluding an independent custodian of securities from the process, thereby furthering the lack of transparency of BLMIS to other investors, regulators, and outside parties.

- Herald's account reported higher annual rates of return on its investments with BLMIS than interest rates that BLMIS could have paid to commercial lenders, which meant that Madoff accepted Herald's investment capital in lieu of other available alternatives that would have been more lucrative for BLMIS.

- Herald's account reported trades of securities where the purported execution price was impossible, being outside the daily range of prices for such securities in the market on the days in question.

- Herald's account reported purchases and sales of options that were, at best, highly unlikely and, at worst, impossible.

- BLMIS purported to trade in the over-the-counter ("OTC") market, which likely would have been more expensive than trading over the Chicago Board Options Exchange, but did not pass on such costs to Herald.

- The compensation system used by BLMIS was atypical in that BLMIS, the entity purportedly employing the hugely-successful and secret proprietary trading system, did not charge fees typically assessed by investment managers, instead being compensated only for the trades that it executed, while Herald, whose only role was to funnel money to BLMIS, received administrative fees and a share of the profits that normally would have gone to the entity in the position of BLMIS.

- Despite its immense size, BLMIS was substantially a family-run operation, employing many of Madoff's relatives, and virtually no outside professionals.

- BLMIS, which reputedly ran the world's largest hedge fund, purportedly was audited by Friehling & Horowitz, an accounting firm that had three employees, one of whom was semi-retired, with offices located in a strip mall. No experienced investment professional reasonably could have believed it possible for any such firm to have audited competently an entity the size of BLMIS.

Second Amended Compl. ¶ 36.

These allegations amply satisfy the Trustee's pleading burden. First, pleadings of fraud by the Trustee are evaluated more liberally because "the Trustee, [as] a third party outsider to the fraudulent transaction, [] must plead fraud on secondhand knowledge for the benefit of the estate and all of its creditors." *In re OPM Leasing Servs., Inc.* 32 B.R. 199, 203 (Bankr. S.D.N.Y. 1983) (Lifland, J.). Second, a transferee need not have actual knowledge of the scheme that renders the conveyance fraudulent; rather, "[c]onstructive knowledge of fraudulent schemes will be attributed to transferees who were aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry." *HBE Leasing Corp. v. Frank* (*HBE Leasing I*), 48 F.3d 623, 636 (2d Cir. 1995); *see also Ostashko v. Ostashko*, No. 00-CV-7162, 2002 WL 32068357, at *21 (E.D.N.Y. Dec. 12, 2002) (pre-*Sharp* case applying *HBE Leasing I* in context of section 276 of the New York Debtor and Creditor law to find that "a plaintiff can show that a transferee 'knew *or should have known*' of a transferor's actual intent," and that "constructive knowledge of [a] fraudulent scheme[] will be attributed to transferees who were aware of circumstances that should have led them to inquire further into the circumstances of the transaction, but who failed to make such inquiry.") (emphasis in original). Despite the many indicia of irregularity alleged in the Second Amended Complaint—which should have been cause for concern to any sophisticated investor—it is not apparent that Herald ever took any steps to question BLMIS' practices or conduct a thorough

examination of its own account statements.  *See* Second Amended Compl. at ¶ 36.  Such

inaction, after being put on notice of irregularity, compels the conclusion that Herald knew, or

should have known, that improper trading activity was occurring.

Herald claims that the Trustee has neither alleged "circumstantial evidence constituting

'badges of fraud' that would meet the pleading standard," nor alleged any link between Herald

and the indicia of fraud listed in the Second Amended Complaint that "would merit an inference

of actual fraudulent intent."  Herald Brief at 23.  As an initial matter, the "badges of fraud" that

Herald takes great pains to raise and knock down are merely examples of conduct that courts

consider indicative of constructive knowledge.  They do not present an exhaustive list of such

considerations.  *See In re Le Café Crème*, 244 B.R. at 239 (using the phrase "may include" when

listing various "badges of fraud").[13]

Furthermore, the sufficiency of the Trustee's  allegations about what Herald knew or

should have known about the fraud must be determined not just based on any one sentence, but

on the totality of all of the facts alleged.  *See, e.g.*, *Iqbal*, 129 S. Ct. at 1949-50 (noting that, "for

the purposes of a motion to dismiss," courts "must take *all* of the factual allegations in the

complaint as true") (emphasis added); *Twombly*, 550 U.S. at 555 ("Factual allegations must be

enough to raise a right to relief above the speculative level, on the assumption that *all* the

allegations in the complaint are true.") (emphasis added) (internal citations omitted)).  The

Trustee has more than amply alleged that Herald was aware of circumstances that should have

made the fund inquire further into whether BLMIS was engaged in fraud.  These allegations,

---

[13] Many cases that list illustrative "badges of fraud" are cases that state "[i]t is the intent of the transferor and not that of the transferee that is dispositive." *In re Le Café Crème*, 244 B.R. at 239.  As such, it is hardly surprising that the "badges of fraud" frequently listed by courts considering the issue of intent are more appropriate for analyzing the intent of the transferor than that of the transferee.  Indeed, a conveyance is fraudulent if a transferee had constructive notice of the fraud and "acquiesced in the transferor's fraudulent design" by inaction.  *See In re Kovler*, 329 B.R. at 18.

taken as a whole—particularly considering the greater liberality that is extended to evaluation of the Trustee's fraud pleadings—satisfy the Trustee's burden to plead actual fraud by pleading constructive knowledge under section 276 of New York Debtor and Creditor law.

Finally, Herald suggests that the fact that it did not withdraw the entirety of its investment prior to the collapse of BLMIS and lost money on its investment indicates that it did not act with fraudulent intent. Herald Brief at 24. Herald's status as a "net loser" is not, however, relevant to the Trustee's claim of actual fraud under New York state law or, for that matter, to the Trustee's claim of actual fraud under the Bankruptcy Code. "[W]here actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given." *In re Sharp*, 403 F.3d at 56. Moreover, Herald's status as net loser is not logically inconsistent with it having knowledge of the fraud. It could be explained equally by Herald having knowledge of the fraud, but being surprised as to the timing of its collapse. The weighing of factual evidence and determining what conclusions to draw therefrom are matters for trial, not a motion to dismiss.

## IV. THE TRUSTEE'S TURNOVER CLAIM IS STATED PROPERLY

Herald argues, in Part IV of the brief in support of its Motion, that the Trustee's claim for turnover of the transfers at issue is not ripe because the Court has not yet avoided those transfers pursuant to sections 544, 547, and 548 of the Bankruptcy Code. 11 U.S.C. §§ 544, 547-48. This argument ignores the express language of SIPA, as well as principles of judicial economy and common practice in Bankruptcy Courts.

SIPA provides express direction to the Court regarding the treatment of property transferred by a debtor when the debtor has insufficient funds to satisfy all the claims against it. In relevant part, the statute provides:

. . . the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is *voidable* or void under the provisions of title 11 . . . . For purposes of such recovery, *the property so transferred shall be deemed to have been the property of the debtor* . . . .

15 U.S.C. § 78fff-2(c)(3) (emphases added).

This provision of SIPA expressly provides that the Trustee may seek to recover transfers that are "voidable"—not just transfers that already have been voided. *Id.* Such language would be meaningless were the Trustee unable to pursue avoidance and turnover of transfers simultaneously, and statutes are interpreted to have operative effect. *See, e.g.*, *Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 167 (2004) (stating the "settled rule that [a court] must, if possible, construe a statute to give every word some operative effect."). In arguing against the inclusion of both avoidance and turnover claims in the same complaint, Herald suggests that this Court ought to bifurcate the Second Amended Complaint into two separate actions—determining in this action whether to avoid transfers to or for the benefit of Herald and leaving for another day the Trustee's effort to recover and collect on avoided transfers. Such bifurcation and delay would be a waste of court resources. As a matter of judicial economy and common practice— and as a matter of law—the Trustee is permitted to assert avoidance claims and turnover claims in the same complaint. 15 U.S.C. § 78fff-2(c)(3) (expressly permitting the Trustee to recover *voidable* transfers); *see In re Jacobs*, 394 B.R. at 664-72 (granting avoidance of a transfer of property and turnover of that property in the same proceeding); *see also* 5 Collier on Bankruptcy § 550.07 (2009) ("The trustee usually will file a consolidated action to avoid the transfer and recover the property transferred or its value."). *See generally Woods & Erickson LLP v. Leonard (In re Avi, Inc.)*, 389 B.R. 721, 734-35 (B.A.P. 9th Cir. 2008) (holding that an avoidance and recovery action may be brought simultaneously to "avoid absurd results," to "protect the trustee

from attempts to impede recovery," and to "afford[] flexibility when a transferee or its assets have disappeared.").

A review of pertinent case law shows that Bankruptcy Courts have addressed avoidance and turnover claims in the same complaint and allowed the claims to proceed apace with one another. In *In re Jacobs*, for example, the court granted summary judgment to the trustee in an avoidance action and held that a transfer of property from the debtors to the defendants was both actually and constructively fraudulent. 394 B.R. at 664-72. In the same ruling, the court also granted summary judgment on the trustee's turnover and accounting claim for that property. *Id.* In so ruling, the court observed that, by virtue of its ruling on the avoidance claim, the property transferred was property of the debtor and subject to turnover and avoidance. *Id.* at 674. The pairing of avoidance and turnover claims is thus appropriate.

Herald cites no contradictory authority that a trustee is prohibited from including both avoidance and turnover claims in a complaint. *See* Herald Brief at 16-18. Herald relies on *In re Student Finance Corp.*, 335 B.R. 539, 554 (D. Del. 2005), to support its contention that the Trustee has not stated properly a claim for turnover, but the case does not justify dismissal of the Trustee's claims. Herald Brief at 17. In *In re Student Finance*, the court found that a properly stated claim for turnover had to allege either that "transfer of the property has already been avoided *or that the property is otherwise the undisputed property of the bankruptcy estate*." 335 B.R. at 554 (emphasis added). Even were this standard controlling, it is satisfied by the Trustee's allegations here. The Trustee alleges in the Second Amended Complaint that the transfers to Herald "constitute the property of the estate to be recovered and administered by the Trustee . . . pursuant to 15 U.S.C. § 78fff-2(c)(3)." Second Amended Compl. ¶ 43. Consequently, the Trustee has alleged that the property sought to be recovered is the property of

the estate of BLMIS—and it is. SIPA makes plain that as to property that was customer property prior to transfer, that property when "so transferred" is deemed to have been property of the estate prior to transfer, and therefore subject to the turnover provisions of section 542.[14] *See* 15 U.S.C. § 78fff-2(c)(3); 11 U.S.C. § 542.

Nor does Herald cite any authority that the turnover claim in this Second Amended Complaint ought to be dismissed at this stage. *See* Herald Brief at 16-18. This Court is permitted to determine one claim in a complaint prior to determining a possibly dependent claim in that same complaint. Accordingly, the Trustee's claim in Count One of the Second Amended Complaint for turnover and accounting pursuant to section 542 of the Bankruptcy Code is properly stated under SIPA and the reasoning of cases such as *In re Jacobs.*

## V. THE TRUSTEE PROPERLY HAS ALLEGED DISALLOWANCE OF HERALD'S SIPA CLAIM

The Second Amended Complaint alleges that Herald's SIPA claim should be disallowed pursuant to section 502(d) of the Bankruptcy Code.[15] Second Amended Compl. ¶¶ 65-66, 68-69; 11 U.S.C. § 502(d). Herald argues that section 502(d) of the Code is inapplicable because the Trustee has not garnered a judicial determination that Herald received a preference or fraudulent transfer when, in fact, section 502(d) explicitly mandates the disallowance of Herald's claim. The plain language of section 502(d) precludes the transferee of an avoidable transfer, such as Herald, from receiving a distribution unless it first returns the transfer:

---

[14] Section 78fff-2(c)(3) of SIPA deems all "customer property" transferred by a debtor automatically to be "property of the debtor" for the purposes of recovering such transfers, thereby "relieving the trustee from having to prove that the property belonged to the debtor's estate." *In re Park South*, 326 B.R. at 512-13 (SIPA "specifically defines a [d]ebtor's 'interests in property' to include property that was previously transferred from a customer's account."); *see* discussion in Part I, *supra*. Thus, section 78fff-2(c)(3) makes it clear that, for the purpose of recovery actions, customer property always is property of the debtor's estate.

[15] The Second Amended Complaint also alleges, in the alternative, that Herald's SIPA claim is supported neither by the books and records of BLMIS nor the claim materials submitted. Second Amended Compl. ¶ 67. Herald's arguments with respect to this allegation are not addressed herein because the Trustee's objection to Herald's claim is permitted as a matter of law pursuant to section 502(d) of the Bankruptcy Code.

> Notwithstanding subsections (a) and (b) of this section, the court *shall disallow* any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d) (emphasis added). The purpose of section 502(d) is to "preclude entities that have received voidable transfers from sharing in the distribution of assets unless or until the voidable transfer has been returned to the estate." *In re Mid Atl. Fund, Inc.*, 60 B.R. 604, 609 (Bankr. S.D.N.Y. 1986).

In the Second Amended Complaint, the Trustee has brought claims against Herald for the receipt of more than $500 million of transfers of BLMIS's property, which transfers are avoidable and recoverable under the Bankruptcy Code. *See* 11 U.S.C. §§ 544, 547-48, 550. Defendant has not returned such transfers to the Trustee. Thus, section 502(d) applies to any claims filed by Herald, because Herald has failed to repay or turn over property recoverable under sections 544, 547, 548, and 550 of the Bankruptcy Code. *See, e.g.*, *In re Asia Global Crossing, Ltd.*, 333 B.R. 199, 202 (Bankr. S.D.N.Y. 2005) (stating that section 502(d) prevents the transferee of an avoidable transfer from receiving distributions unless he first returns the transfer). Accordingly, the Trustee has pleaded a legal basis for disallowing Herald's SIPA claim, and Herald's motion to dismiss this Count should be denied.

## VI. THE TRUSTEE CAN RECOVER TRANSFERS MADE TO TAX AUTHORITIES PURPORTEDLY ON BEHALF OF HERALD

Herald argues in Part VI of the brief in support of its Motion that the Trustee cannot recover tax payments that BLMIS made to the U.S. Treasury on Herald's behalf. This argument is a non-starter, however, because the transfers in question were not actually tax payments. They were transfers that BLMIS made in an effort to conceal an ongoing and burgeoning Ponzi

scheme by making it appear as though real dividends were being paid on real securities held in the accounts of foreign persons. As we now know, there were no securities held, no dividends paid and, consequently, the transfers to the U.S. Treasury were not income tax withheld. Such transfers were comprised of fictitious dividends generated from BLMIS's massive fraud, and were made in an effort to perpetuate the myth, to the U.S. government and investors alike, that BLMIS was a legitimate operation. Transfers were made, and reported as made, on behalf of Herald as "withholding" even though the amounts were comprised of fictitious dividends. Herald did not have any dividends or other investment profits to be taxed. That BLMIS transferred money to the U.S. Treasury, and sent Herald an invoice stating that tax payments had been made on the fund's behalf, does not make the transfers tax payments.

Herald argues that the funds BLMIS withheld from Herald's account for eventual transfer to the U.S. Treasury were held in trust for the tax authority and should not be considered property of the estate recoverable by the Trustee. Herald Brief at 20-21. However, as described above, these transfers were not tax payments and, therefore, could not have been held in trust for the tax authorities. Further, it is irrelevant that the amounts withdrawn ultimately were paid to taxing authorities, as opposed to Herald or some other third party. As soon as the funds invested by Herald were received by BLMIS, the funds became "customer property" under SIPA. *See* 15 U.S.C. § 78*lll*(4). BLMIS falsely reported that the funds it held were invested in securities on which dividends were paid and purported to withhold taxes on the supposed dividends, but because BLMIS was, in fact, a massive Ponzi scheme, the funds that were withdrawn from Herald's account and transferred to the U.S. Treasury on Herald's behalf were—and could not have been anything other than—"customer property." By virtue of section 78fff-2(c)(3), customer property so transferred is considered property of BLMIS as a matter of law, and such

transfers are avoidable by the Trustee under sections 544, 547 and 548 of the Bankruptcy Code. *In re Park South*, 326 B.R. at 512-13; *see* 15 U.S.C. § 78fff-2(c)(3); 11 U.S.C. §§ 544, 547(b), 548(a).

Herald also argues that any transfers BLMIS made on behalf of Herald to the U.S. Treasury in the 90 days prior to the filing date were not made "for or on account of an antecedent debt owed by the debtor" because tax debts are not due, and do not become "antecedent," until the "day when such tax is last payable without penalty, including any extension." Herald Brief at 21. This argument, too, fails because, as described above, these transfers were not actually tax payments. Instead, they represent a partial repayment of Herald's investment in BLMIS, which—because Herald was a creditor of BLMIS—constitutes repayment of an antecedent debt. 15 U.S.C. § 78fff-2(c)(3). The fact that the transfers were made to a third party for Herald's benefit does not negate the fact that they were payments on account of an antecedent debt that BLMIS owed to Herald.

Finally, Herald argues that the transfers made to the U.S. Treasury were not a debt owed by BLMIS because they were made on behalf of Herald. Herald's argument appears to be that because the transfers were for payments of taxes they represented a debt owed by Herald, rather than a debt owed by BLMIS. This argument also fails because the transfers were not tax payments for the reasons discussed above. Furthermore, even were the argument valid, at most it would create a factual question as to who owed the debt, which would not properly be considered until the summary judgment stage at the earliest.[16]

---

[16] Herald cited to this Court's decision in *In re 1634 Assocs.*, 157 B.R. 231 (Bankr. S.D.N.Y. 1993) (Lifland, J.), for the proposition that the decision granted "defendant's motion for summary judgment on preference claim when alleged transfer was on account of an antecedent debt owed, not by the debtor, but by another entity." *See* Herald Brief at 22-23. Herald's reliance on that case is misplaced. This Court did not grant defendant's motion for summary judgment on this issue; rather, the Court denied the plaintiff's motion for summary judgment because material issues of fact as to who owed the debt precluded summary judgment. *In re 1634 Assocs.*, 157 B.R. at 34.

## VII. HERALD'S MOTION TO DISMISS CERTAIN REQUESTED REMEDIES IN THIS CASE IS WITHOUT MERIT

Herald argues that the Trustee is not entitled to a constructive trust or to an assignment of Herald's tax refunds. Herald Brief at 23-25. As a threshold matter, the Trustee has not brought a cause of action for a constructive trust or for Herald's tax refunds; these are merely among the remedies requested in the Trustee's prayer for relief. *See* Second Amended Compl., pp. 22-23, prayers vii & viii. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim is properly directed at a claim in pleading. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2009). A demand for relief, however, is not a part of a plaintiff's claim and, as such, is not properly the object of a Rule 12(b)(6) motion to dismiss. *See id.*; Fed. R. Civ. P. 54(c) (except in the case of a default judgment, the "final judgment should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings"); Wright & Miller, *supra*, at § 1255 (sufficiency of a pleading is tested by claim and the demand for judgment is not considered part of the claim for that purpose; thus, if a pleader is entitled to any relief, then a demand for an improper remedy will not be fatal to the party's pleading). Here, the Trustee has pleaded numerous causes of action entitling him to relief, and will be entitled to all appropriate remedies upon judgment regardless of the Second Amended Complaint's prayer for relief. Fed. R. Civ. P. 54(c). It would be to no effect to grant a motion to dismiss the Trustee's selection of a requested remedy.

In any event, the remedies sought by the Trustee are proper. The imposition of a constructive trust is an equitable remedy that is warranted by the facts of this case, and the Trustee's request for an assignment of tax refunds will not result in a windfall to the estate.

Rather, the latter request is a means to ensure recovery of all avoidable transfers received by, or made for the benefit of, Herald.

Funds transferred to Herald represent the fruits of a long-running and massive fraud. As detailed in the Second Amended Complaint, Herald knew or should have known that it was benefiting from a fraud, and the imposition of a constructive trust to assist in the recovery of monies held by Herald, or by third parties who received transfers made for the benefit of Herald, is both supported in law and required by the circumstances to effect equity. The elements for a constructive trust that Herald relies on in support of its Motion "are not talismanic," and are guideposts only. *ESI, Inc. v. Coastal Power Prod. Co.*, 995 F. Supp. 419, 436-37 (1998); *see In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 352-53 (2d Cir. 1992). Every element need not be satisfied in all cases. *See ESI*, 995 F. Supp. at 436-37 (denying motion to dismiss constructive trust claims despite failure to allege certain elements); *see also Simonds v. Simonds*, 380 N.E.2d 189, 194 (N.Y. 1978). Generally, what is required for imposing a constructive trust is "that a party hold property 'under such circumstances that in equity and good conscience [the party] ought not to retain it." *Simonds*, 380 N.E.2d at 194; *ESI*, 995 F. Supp. at 437. A simple assertion that a constructive trust should be imposed, together with sufficient detail giving notice that the money being sought is improperly held as a matter of equity, sufficiently states a cause of action, *see Dampskibsselskabet AF 1912 v. Black & Geddes, Inc. (In re Black & Geddes, Inc.)*, 16 B.R. 148, 152-53 (Bankr. S.D.N.Y. 1981), and therefore is more than sufficient to support the assertion of a requested remedy.

As to Herald's "tax refunds," the Trustee is not seeking any excess recovery that could contravene section 550 of the Bankruptcy Code. To the contrary, the Trustee is trying to ensure that he can recover, in accordance with section 550, all of the property, or the value of all of the

property, transferred to or for the benefit of Herald.  As Herald noted, section 550 is intended "to restore the estate to the financial condition that it would have enjoyed if the transfer had not occurred."  Herald Brief at 25 (citing *In re Centennial Textiles*, 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998)); *see also In re Andrew Velez Constr.*, 373 B.R. at 274.

The refunds sought by the Trustee result from payments made by BLMIS on behalf of Herald to the U.S. Treasury based on fictitious dividends purportedly—but not actually—realized by the Herald account over the course of the Ponzi scheme.  The securities on which the "dividends" purportedly were earned were never actually traded.  Any overpayment of purported tax withholding, or a right to a refund of the same, would constitute a return to Herald of customer property paid on fictitious dividends.  Recovery of these amounts is therefore necessary to restore the estate to the financial condition that it would have been in had the transfers to the U.S. Treasury for the benefit of Herald not occurred.  The Trustee is permitted to recover the full value of an avoidable transfer, even if composite elements of that value must come from more than one transferee.  *Bertrum v. Laughlin (In re Laughlin)*, 18 B.R. 778, 781 (Bankr. W.D. Mo. 1982).  In this case, refunds of transfers made to the U.S. Treasury constitute a component of avoidable transfers and should be returned to the Trustee for the benefit of the estate of BLMIS.

## CONCLUSION

For the foregoing reasons, the Trustee respectfully requests that Herald's Motion be denied in its entirety.

Dated:  New York, New York
         November 13, 2009

Respectfully submitted,

*/s/ Marc E. Hirschfield*
Baker & Hostetler LLP
45 Rockefeller Plaza
New York, New York 10111
Telephone: (212) 589-4200
Facsimile: (212) 589-4201
David J. Sheehan
Email: dsheehan@bakerlaw.com
Marc E. Hirschfield
Email: mhirschfield@bakerlaw.com

*Attorneys for Irving H. Picard, Esq., Trustee*
*for the Substantively Consolidated Liquidation*
*of Bernard L. Madoff Investment Securities*
*LLC and Bernard L. Madoff*

Of Counsel:

Frederick W. Chockley III
John J. Burke
Jennifer M. Walrath
Baker & Hostetler LLP
1050 Connecticut Avenue, N.W.
Suite 1100
Washington, DC  20036
Telephone: (202) 861-1500
Facsimile: (202) 861-1783
fchockley@bakerlaw.com
jburke@bakerlaw.com
jwalrath@bakerlaw.com

300032215