**KIRKLAND & ELLIS LLP**
Jay P. Lefkowitz, P.C.
Joseph Serino, Jr.
Laura B. Kadetsky
601 Lexington Avenue
New York, New York 10022
(212) 446-4800
jay.lefkowitz@kirkland.com
joseph.serino@kirkland.com
laura.kadetsky@kirkland.com

*Attorneys for Defendant Herald Fund SPC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| BERNARD L. MADOFF INVESTMENT | ) | Adv. Pro. No. 08-01789 (BRL) |
| SECURITIES LLC, | ) | |
| | ) | SIPA LIQUIDATION |
| Debtor. | ) | |
| | ) | (Substantively Consolidated) |
| | ) | |

| | | |
|---|---|---|
| IRVING H. PICARD, Trustee for the Liquidation | ) | |
| of Bernard L. Madoff Investment Securities LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adv. Pro. No. 09-01359 (BRL) |
| | ) | |
| HERALD FUND SPC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HSBC BANK PLC | ) | |
| | ) | |
| and | ) | |
| | ) | |
| HSBC SECURITIES SERVICES | ) | |
| (LUXEMBOURG) S.A., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HERALD FUND SPC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

# TABLE OF CONTENTS

Page

INTRODUCTION...................................................................................................1

ARGUMENT ........................................................................................................3

I.     THE 90-DAY AND TWO-YEAR TRANSFERS WERE NOT INTERESTS
       OF THE DEBTOR IN PROPERTY. ..................................................................4

II.    THE SECTION 546(e) "SAFE HARBOR" BARS THE TRUSTEE FROM
       RECOVERING AS PREFERENCES TRANSFERS IN CONNECTION
       WITH A SECURITIES CONTRACT. ................................................................8

III.   THE TRUSTEE FAILS TO ALLEGE ADEQUATELY ACTUAL
       FRAUDULENT INTENT UNDER NEW YORK LAW. ........................................11

IV.    THE TRUSTEE CANNOT STATE A CLAIM FOR TURNOVER. ..........................15

V.     THE TRUSTEE STATES NO BASIS FOR OBJECTING TO HERALD
       FUND'S SIPA CLAIM. ...............................................................................17

VI.    THE TRUSTEE CANNOT RECOVER TAX PAYMENTS MADE TO ANY
       TAX AUTHORITY ON HERALD FUND'S BEHALF. .........................................17

VII.   THE TRUSTEE IS NOT ENTITLED TO A CONSTRUCTIVE TRUST OR
       ASSIGNMENT OF HERALD FUND'S TAX RETURNS........................................19

CONCLUSION ...................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal,*
  129 S.Ct. 1937 (2009) ................................................................................................ 4

*B.A. Ballou and Co., Inc. v. Citytrust,*
  591 A.2d 126 (Conn. 1991) ........................................................................................ 6

*Bell Atl. Corp. v. Twombly,*
  550 U.S. 544 (2007) .................................................................................................... 4

*Chambers v. Time Warner, Inc.,*
  282 F.3d 147 (2d Cir. 2002) ....................................................................................... 5

*Conn. Nat. Bank v. Germain,*
  503 U.S. 249 (1992) .................................................................................................... 9

*Cortec Indus., Inc. v. Sum Holding L.P.,*
  949 F.2d 42 (2d Cir. 1991) ......................................................................................... 5

*HBE Leasing Corp. v. Frank,*
  61 F.3d 1054 (2d Cir. 1995) ..................................................................................... 12

*Helprin v. Harcourt, Inc.,*
  277 F. Supp. 2d 327 (S.D.N.Y. 2003) ...................................................................... 19

*In re Andrew Velez Constr., Inc.,*
  373 B.R. 262 (Bankr. S.D.N.Y. 2007) ..................................................................... 12

*In re Chase & Sanborn Corp.,*
  124 B.R. 368 (Bankr. S.D. Fla. 1991) ...................................................................... 17

*In re Colonial Realty Co.,*
  980 F.2d 125 (2d Cir. 1992) ..................................................................................... 16

*In re CyberCo Holdings, Inc.,*
  382 B.R. 118 (Bankr. W.D. Mich. 2008) .................................................................. 15

*In re Kovler,*
  249 B.R. 238 (Bankr. S.D.N.Y. 2000), *amended by* 329 B.R. 17 (Bankr. S.D.N.Y.
  2005). ......................................................................................................................... 13

*In re Marketxt Holdings Corp.,*
  361 B.R. 369 (Bankr. S.D.N.Y. 2007) ..................................................................... 12

*In re Saba Enters., Inc.,*
    Adv. Pro. No. 09-1001, 2009 WL 3049651 (Bankr. S.D.N.Y., Sept. 18, 2009) ............. 13

*In re Sharp Int'l Corp.,*
    403 F.3d 43 (2d Cir. 2005).................................................................................... 12

*In re Student Fin. Corp.,*
    335 B.R. 539 (D. Del. 2005) ................................................................................. 15

*In re Teligent, Inc.,*
    325 B.R. 134 (Bankr. S.D.N.Y. 2005) ................................................................. 15

*Jacobson v. Peat, Marwick, Mitchell & Co.,*
    445 F. Supp. 518 (S.D.N.Y. 1977) ...................................................................... 18

*Lewis v. McGraw,*
    619 F.2d 192 (2d Cir. 1980)................................................................................. 14

*Moon v. Webber Oil Co.,*
    Civ. No. 7-126-B-W, 2008 WL 130361 (D. Me. Jan. 10, 2008) ......................... 19

*Public Service Electric Gas Co. v. FPC,*
    371 F.2d 1 (3d Cir. 1967).................................................................................... 6

*Roth v. Jennings,*
    489 F.3d 499 (2d Cir. 2007)................................................................................. 5

*Smith v. Local 819 I.B.T. Pension Plan,*
    291 F.3d 236 (2d Cir. 2002)................................................................................. 4

*Snepp v. United States,*
    444 U.S. 507 (1980) ............................................................................................ 20

*U.S. v. McCombs,*
    30 F.3d 310 (2d Cir. 1994).................................................................................. 13

*Wright v. Ernst & Young LLP,*
    152 F.3d 169 (2d Cir. 1998)................................................................................. 18

**Statutes**

11 U.S.C. § 542 ....................................................................................................... 16

11 U.S.C. § 546(e) .................................................................................................. 8

11 U.S.C. § 547(b) .................................................................................................. 4

11 U.S.C. § 550(a) .................................................................................................. 20

11 U.S.C. § 741(7) ................................................................................................ 11

11 U.S.C. §548(a) ................................................................................................... 4

15 U.S.C. § 78fff-2(c)(3) .................................................................................... 7, 16

15 U.S.C. § 78lll(4) ............................................................................................... 7

N.Y. D.C.L. § 276 ............................................................................................... 12

**Rules**

Fed. R. Civ. P. 54(c) ......................................................................................... 19

**Treatises**

COLLIER ON BANKRUPTCY 541.06[1][a] ..................................................... 5

# INTRODUCTION

The Trustee apparently is willing to go to any lengths to fulfill his appointed task of "clawing back" money withdrawn from Bernard L. Madoff Investment Securities LLC ("BLMIS"). Indeed, the Trustee's Memorandum of Law in Opposition to Herald Fund SPC's Motion to Dismiss the Second Amended Complaint ("Opposition") is a series of attempts to push the limits of the Securities Investor Protection Act ("SIPA"), the U.S. Bankruptcy Code, the New York Debtor and Creditor Law ("DCL"), and governing case law in order to advance his purposes. And the Trustee will test these boundaries even against an innocent investor like Herald Fund, which lost almost $1 billion of the $1.5 billion deposited in an account opened by HSBC Securities Services (Luxembourg) S.A. ("HSBC (Luxembourg)") on behalf of Herald Fund at BLMIS (the "Herald Fund Account"). The Court should not permit these tactics.

As demonstrated in Herald Fund's opening brief, neither SIPA, the Code, nor the DCL supports the Trustee's claims here. Rather, each and every one of the Trustee's causes of action fails to state a claim for relief, because his allegations are conclusory, insufficient, and illogical. His arguments — let alone his newly attempted allegations — do not overcome these problems.

*First*, the Trustee fails to state an avoidance claim under either Section 547(b) or Section 548(a) of the Bankruptcy Code because the controlling account documents establish that BLMIS only ever held the subject property as a bailee and thus that such property is not properly avoidable. The Trustee's assertion that the applicable Customer Agreement is not before the Court is belied by applicable law, because he relied on the Customer Agreement and had knowledge or possession of it when making his allegations. Further, the bailment is not defeated even if Herald Fund did not expect return of the exact same funds deposited, because commingling does not itself defeat a bailment. In addition, even SIPA's recovery provision does not show that the subject property was property of the estate that he may recover. SIPA's

definition of "customer property," and in turn its presumption as to property of the debtor, relies on the presence of "securities accounts," yet the Trustee himself continually stresses the absence of any "securities" and therefore, by his logic, "securities accounts" here. The Trustee should not be permitted to contradict his own arguments, and it is thus clear that the central element of a fraudulent conveyance or preference action is missing.

*Second*, Section 546(e) bars the Trustee from recovering as preferences any transfers made to a financial institution "in connection with a securities contract." The "safe harbor" applies here because the Trustee alleges that the 90-Day Transfers were made to HSBC Bank PLC ("HSBC"), a financial institution, and the applicable Trading Authorization was a contract that contemplated the purchase and sale of securities. The Trustee's arguments, which point to legislative intent, legislative history, and the purported purpose of SIPA, are inapplicable when the plain text of the statute is unambiguous, as it is here. Further, it is incorrect that application of the "safe harbor" ties his hands and is inequitable. Rather, the Trustee still maintains other avenues to avoid the same transfers, just not those explicitly barred by the Code.

*Third,* the Trustee is mistaken that controlling authority excuses him from pleading transferee intent under Section 276 of the DCL. Some courts continue to require a showing that the transferee and the transferor both acted with actual fraudulent intent under this provision, and the supposedly controlling authority that the Trustee cites neither determines this issue nor comes out as the Trustee describes. Further, the Trustee does not — because he cannot — allege the requisite fraudulent intent on the part of Herald Fund in anything more than a generalized and implausible fashion.

*Fourth*, it remains black letter law that a trustee cannot succeed on a turnover action under Section 542 until he has established that property is indisputably the property of the estate.

Given the Trustee's failure to state an avoidance claim, he has not alleged that the property is even "voidable," let alone "void," so a turnover action cannot stand.

*Fifth*, the Trustee again oversteps his bounds and manipulates statutory language to argue that he can object to Herald Fund's SIPA claim. But there has been no determination that Herald Fund must repay any alleged transfer. Indeed, Herald Fund lost nearly $1 billion with BLMIS, and it is entitled to participate in the SIPA proceedings. Further, without sufficient allegations of an avoidable transfer, the Trustee lacks authority to object to Herald Fund's SIPA claims.

*Sixth*, the Trustee cannot now ignore or rewrite his own allegations that money withheld by BLMIS and paid to the government constituted "tax payments." The Trustee cannot recover these transfers, because, as tax payments, they were never property of the estate, nor were they made for or on account of an antecedent debt of the debtor.

*Finally*, the Trustee's statutory authority does not permit him to obtain certain remedies he seeks, and the Court may thus strike such remedies as contrary to law. Even if he did have such authority — which he does not — the Trustee has not alleged and will not be able to prove the elements of a constructive trust, because Herald Fund's loss of almost $1 billion definitively shows that it was not unjustly enriched, as is required for imposition of a constructive trust. And the Trustee does not adequately allege a basis for recovering tax refunds. For these reasons, and as further discussed below and in the Memorandum of Law in Support of Herald Fund SPC's Motion to Dismiss the Second Amended Complaint ("Herald Fund Memorandum"), the Trustee has not adequately stated any claim for relief against Herald Fund, and the Court should dismiss his claims in their entirety.

## ARGUMENT

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made applicable here by Federal Rule of Bankruptcy Procedure 7012, "a complaint must contain sufficient factual

matter, accepted as true, 'to state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A court need not accept as true allegations that are merely "[c]onclusory" or "legal conclusions masquerading as factual conclusions." *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal citation and quotation omitted). The Trustee's claims do not meet this standard, and all must be dismissed.

## I. THE 90-DAY AND TWO-YEAR TRANSFERS WERE NOT INTERESTS OF THE DEBTOR IN PROPERTY.

The Trustee may not recover the 90-Day or Two-Year Transfers under Sections 547(b) or 548(a), because he has not alleged the essential element that they were transfers "of an interest of the debtor in property." 11 U.S.C. §§ 547(b) & 548(a). Rather, under the Trustee's own allegations, which incorporate the provisions of the Customer Agreement, BLMIS held the transferred assets only as a bailee, and thus the Trustee may not recover them. The Trustee makes two arguments in his attempt to defeat the implications of what he has alleged: (1) that BLMIS did not hold the assets in the Herald Fund Account as a bailee under New York law, and (2) that the transfers at issue were property of the debtor under SIPA as referenced in Section 78fff-2(c)(3). Neither of these arguments is availing.

First, the Trustee ignores the import of the Customer Agreement, which created a bailment between Herald Fund to BLMIS. The Customer Agreement plainly dictates that the Customer, Herald Fund, always had the right to the return of its invested assets upon appropriate demand. (*See* Decl. of Laura B. Kadetsky in Supp. of Herald Fund SPC's Mot. to Dismiss the Second Amended Complaint ("Kadetsky Decl.") Ex. A at ¶ 5.) Furthermore, the Customer Agreement confirms that BLMIS is "acting as the Customer's agent," (*see* Kadetsky Decl. Ex. A at ¶ 7), which relationship is functionally similar to a bailor-bailee relationship in that title to the

property remains with the bailor or principal. *See* 5 COLLIER ON BANKRUPTCY 541.06[1][a]. The Customer Agreement thus created a bailor-bailee relationship, such that title to the transferred property always remained with Herald Fund and not with BLMIS. (Herald Fund Mem. at 8-10.)

Rather than addressing these provisions, the Trustee first argues that the Customer Agreement is not properly before the Court on this motion to dismiss. That is incorrect. As stated in *Roth v. Jennings*, 489 F.3d 499 (2d Cir. 2007), which the Trustee cites, ""[d]ocuments that are attached to a complaint or incorporated in it by reference are deemed part of the pleading and may be considered." *Id.* at 509; *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991). When a plaintiff had possession or knowledge of a document and relied on its terms and effects in drafting a complaint, the court may consider that document on a motion to dismiss. *See Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153-54 (2d Cir. 2002) (court may consider any documents the terms and effect of which plaintiff relies on in drafting the complaint and affirming district court's consideration of contracts on motion to dismiss).

Here, the Customer Agreement must be deemed incorporated into the Second Amended Complaint ("SAC"). The SAC explicitly refers to the Customer Agreement, and the Trustee relies on it to assert jurisdiction over Herald Fund — both facts that the Trustee cannot and does not dispute. The Customer Agreement also purportedly governed the account at issue and caused it to be opened at BLMIS,[1] (SAC ¶ 29), such that the Customer Agreement and related documents are the basis of the Trustee's claims against Herald Fund. Further, there can be no

---

[1] The Trustee also relies on the existence of the Herald Fund Account, as his definition of "customer property," and in turn the presumption as to "property of the estate," requires the existence of a "securities account." (Opp'n at 7.) If the "securities account" itself is so integral to the Trustee's arguments, then surely the agreements that triggered its existence must be as well.

dispute that the Trustee had possession or knowledge of these documents and relied upon them in drafting the SAC. *See Chambers*, 282 F.3d at 153-54. Therefore, the Customer Agreement is properly before the Court on Herald Fund's Motion. *See Cortec*, 949 F.2d at 47.

The Trustee next argues that any implied bailment must have been defeated because Herald Fund could not have expected to receive the exact same funds back from BLMIS as were deposited there. This argument fails for two reasons. First, in an example of the Trustee changing his tune to suit his purposes, he relies on what he would call an "extrinsic" document, the Trading Authorization, as the basis for asserting that Herald Fund could not have expected return of the exact same funds. Yet "extrinsic" documents — the Trading Authorization on which the Trustee relies and the Customer Agreement on which Herald Fund relies — are either properly before the Court on this motion, or they are not. The Trustee cannot have it both ways.

Second, courts have recognized that "the commingling of fungible goods alone does not defeat a bailment when the bailor specifically intended to retain ownership of a known share of the commingled goods." *B.A. Ballou and Co., Inc. v. Citytrust*, 591 A.2d 126, 129-30 (Conn. 1991) (under Connecticut law), citing *Public Service Electric Gas Co. v. FPC*, 371 F.2d 1 (3d Cir. 1967). Here, as a customer of BLMIS, Herald Fund clearly intended to retain ownership of its share of the invested assets, even if not the precise assets deposited, such that return of other than the exact same assets does not defeat the bailment.

As to his second main argument, the Trustee's reliance on Section 78fff-2(c)(3) of SIPA to argue that the subject transfers must be property of the debtor does not assist him here. Section 78fff-2(c)(3) does not relieve the Trustee of the burden of showing that property of the debtor was transferred. Rather, it "deems" as property of the debtor transferred property that would have been "customer property" had it not been transferred:

. . . the trustee may recover any property transferred by the debtor which, except for such transfer, would have been customer property if and to the extent that such transfer is voidable or void under the provisions of Title 11 . . . For purposes of such recovery, the property so transferred shall be deemed to have been property of the debtor . . . .

15 U.S.C. § 78fff-2(c)(3). This provision of SIPA thus refers in turn to SIPA's definition of "customer property": "The term 'customer property' means cash and securities . . . at any time received, acquired, or held by or for the account of a debtor from or for the *securities account* of a customer. . . ." 15 U.S.C. § 78lll(4) (emphasis added).

The Trustee uses this definition of "customer property" to support his recovery power under SIPA, asserting that "[b]ecause BLMIS was a Ponzi scheme, all of the money involved was, at some point, provided by customers and held by BLMIS for the securities accounts of customers." (Opp'n at 7.) The Trustee thus apparently relies on the existence of "securities accounts" at BLMIS to make his point. Yet arguments based on the *existence* of securities accounts are contradicted by the Trustee's own logic in the rest of his Opposition, in which he continually grounds arguments on the *absence* of any actual securities and, by extension, any actual securities accounts. (*See, e.g.*, Opp'n at 14 ("Avoidance of the transfers from BLMIS…would have absolutely no impact on the commodities and securities market because no securities were purchased by BLMIS…").) By the Trustee's own logic, there were in reality no "securities accounts" at BLMIS because it was a Ponzi scheme and thus there could have been no "customer property." The Trustee cannot take such contradictory positions. He cannot ignore the reality of the Ponzi scheme on the one hand to claim that the 90-Day and Two-Year Transfers are customer property and simultaneously rely on that scheme's true nature and corresponding absence of securities to advance his other arguments. The Court should not countenance such contradictory positions.

7

Finally, the Trustee claims that if the bailment were recognized here, "it would have extraordinary and unprecedented effect" and somehow prevent not only this trustee "but other trustees in almost all SIPA proceedings" from fulfilling their "statutory obligations," while "thwarting" the purpose of SIPA. (Opp'n at 8.) But this ignores the fact that Herald Fund's argument is based on the specific documents at issue here. It in no way indicates that the same analysis will apply in any other SIPA proceeding involving a different governing structure. Thus, the bailment here, and the bar on recovery because of that bailment, neither renders SIPA meaningless nor prevents trustees acting under SIPA and the Bankruptcy Code from fulfilling their statutory obligations. The Trustee therefore cannot recover the 90-Day Transfers as preferences or the Two-Year Transfers as fraudulent conveyances under the Bankruptcy Code. Accordingly, these claims should be dismissed.

## II. THE SECTION 546(e) "SAFE HARBOR" BARS THE TRUSTEE FROM RECOVERING AS PREFERENCES TRANSFERS IN CONNECTION WITH A SECURITIES CONTRACT.

The Trustee's claim for preferences is barred by the plain text of the "safe harbor" that Congress provided in Section 546(e). That provision prevents recovery of transfers "made by or to (or for the benefit of) a . . . financial institution . . . in connection with a securities contract, as defined in section 741(7)." 11 U.S.C. § 546(e). Here, the Trustee alleges transfers made to HSBC (a financial institution)[2] in relation to the Trading Authorization that governed the Herald Fund Account and contemplated the purchase and sale of securities (a securities contract). (SAC ¶¶ 26-27, 29, 33-35.) Thus, even a cursory reading of the applicable provisions demonstrates

---

[2]  The Trustee does not dispute that the element of a transfer to a financial institution is alleged here.

that Section 546(e) applies and he cannot use Section 547(b) to avoid these transfers. The Trustee's attempts to get around this clear result are insufficient.

First, the Trustee seeks to escape the implications of the plain text of Section 546(e) by pointing to purported legislative intent and history. (Opp'n at 13-14.) But when the plain text of a statute is unambiguous, the court should not go beyond it to sources such as legislative intent and history to aid its interpretation.[3] *See Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there . . . When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete.") (internal quotation and citations omitted). Here, as discussed, Section 546(e) unambiguously states that when a transfer is made to a financial institution in connection with a securities contract, it cannot be avoided under Section 547(b). Thus, there is no need to resort to inapplicable methods of statutory interpretation.

Second, the Trustee complains that applying the safe harbor here would lead to a "severe limitation" of his avoidance powers and "thwart" the remedial purpose of SIPA. (Opp'n at 17.) But this is not correct. While the safe harbor restricts the Trustee from avoiding transfers as preferences or constructive fraudulent conveyances, it does not restrain his power to avoid actually fraudulent transfers under federal or state law, as he takes pains to point out several times. (Opp'n at 12 n.6, 16-17.) Thus, the safe harbor does not affect the Trustee's ability to recover the very same transfers, as long as the elements of Section 548(a)(1)(A) and

---

[3]   Although courts have gone beyond the plain text of Section 546(e) when considering whether a transfer is a "settlement payment" or "margin payment," those cases involved prior versions of Section 546(e) and not the "securities contract" portion of the statute in particular.

corresponding state law are met. The Trustee's reliance on these provisions is apparent, and he should not be allowed to overstep his statutory bounds simply to have more avenues to recovery.

Third, and similarly, the Trustee argues that Section 546(e) should not apply because it is inconsistent with SIPA. If, however, the Trustee maintains his power to avoid actually fraudulent conveyances and thereby to effect equitable distribution, any inconsistency is difficult to identify. Section 546(e) restricts the methods that the Trustee may use to achieve his ends, but it does not diminish his ability to achieve those same ends in other ways. It does not, therefore, "thwart" SIPA's ultimate purpose, as described by the Trustee.

Fourth, the Trustee's invocation of equitable distribution misses the mark. Although the Trustee asserts that applying the safe harbor "is warranted here to avoid preferring one investor over others," (Opp'n at 16), nothing in Section 546(e) indicates that its protections would be limited to Herald Fund. Indeed, Section 546(e) should limit the Trustee's avoidance powers as to any transfers from any BLMIS account governed by a similar Trading Authorization or other securities contract to a bank. While this may not be the equitable distribution the Trustee contemplates, it does treat all similarly situated entities the same.

Finally, the Trustee fails even to address Herald Fund's argument that the Trading Authorization is a "contract for the purchase, sale, or loan or a security" as defined in Section 741(7)(A)(i) and instead merely states without any analysis that it "does not fit" into that category. (Opp'n at 18.) Yet the Trading Authorization clearly contemplates the purchase and sale of securities, as it authorized Madoff to "buy, sell and trade in stocks, bonds, options and any other securities." Further, the Trading Authorization may be considered a "master agreement" under Section 741(7)(A)(x), thereby coming within another definition of "securities contract." Although the Trustee apparently concludes that a "master agreement" requires "sub-

agreements or transactions" that involve the actual purchase or sale of securities (Opp'n at 18), nothing in the statute restricts the definition as such. Rather, Section 741(7)(A)(x) requires only "a master agreement that provides for an agreement or transaction referred to" in certain other clauses. Providing for an underlying agreement or transaction does not necessarily involve the consummation of an actual underlying purchase or sale. Therefore, because the Trading Authorization is a "securities contract" under the applicable definition, and transfers in connection with that Trading Authorization were made from BLMIS to a financial institution, Section 546(e) bars the Trustee from avoiding those transfers under Section 547(b).

## III.  THE TRUSTEE FAILS TO ALLEGE ADEQUATELY ACTUAL FRAUDULENT INTENT UNDER NEW YORK LAW.

The Trustee fails to state a claim under Section 276 of the DCL because he does not allege adequately actual fraudulent intent on the part of Herald Fund, which is required under New York law. The Trustee's arguments in support of his claim do nothing to counteract this basic requirement. First, the Trustee argues that he need not allege Herald Fund's actual fraudulent intent to state a claim to avoid the Six-Year Transfers under Section 276 — even though he spends pages attempting to show that he has done just that. This argument misstates the law in this district, in which at least some courts require a plaintiff to allege actual fraudulent intent on the part of *both* the transferor (BLMIS) and the transferee (Herald Fund). Second, the Trustee asserts that his cookie-cutter allegations as to Herald Fund's alleged intent meet the pleading standard under New York law. Yet the Trustee has alleged no facts sufficient to clear the pleading hurdle as to Herald Fund's purported intent.

Section 276 of the New York Debtor and Creditor law states that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present

11

and future creditors." N.Y. D.C.L. § 276. The Trustee argues that *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005), is "binding precedent" holding that a plaintiff under Section 276 need only show fraudulent intent on the part of the transferor. (Opp'n at 19.) This argument rests on the premise that the absence of a specific reference to the transferee's intent in *Sharp* dictates that the transferee's intent is not required under this provision. But *Sharp* never addresses the question of whether the transferee's intent must be shown under Section 276. Rather, *Sharp* states that, under Section 276, "'a creditor must show intent to defraud on the part of the transferor.'" *In re Sharp Int'l Corp.*, 403 F.3d at 56 (dismissing Section 276 claim for failure to allege fraud in relation to transaction at issue) (quoting *HBE Leasing Corp. v. Frank*, 61 F.3d 1054, 1059 n.5 (2d Cir. 1995)). *In re Sharp* never mentioned the divide in the lower courts on this issue, nor did it provide any analysis or discussion of whether proof of the transferee's intent is *also* required, nor did it hold that the allegations were sufficient to state a claim under Section 276. *See In re Sharp Int'l Corp.*, 403 F.3d at 56.

Since *Sharp*, courts within the jurisdiction continue to require proof of actual fraudulent intent of both parties for a claim under Section 276. *See, e.g., In re Andrew Velez Constr., Inc.*, 373 B.R. 262, 276 (Bankr. S.D.N.Y. 2007) ("Under the New York statute, unlike a claim under Bankruptcy Code § 548(a)(1), [plaintiff] must plead fraudulent intent of both the transferor and the transferee under § 276."); *In re Marketxt Holdings Corp.*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) ("Under the Bankruptcy Code, the plaintiff must establish the actual fraudulent intent of the transferor/debtor; under the NYDCL, the plaintiff must establish the actual fraudulent intent of both the transferor and the transferee."). Indeed, less than three months ago, the Bankruptcy Court in this district recognized that "there is disagreement as to what needs to be pleaded-transferor's intent only or both the transferor's and the transferee's intent-when

bringing an intentional fraudulent conveyance claim under Section 276 of the NYDCL." *See In re Saba Enters., Inc.*, Adv. Pro. No. 09-1001, 2009 WL 3049651, at *6 n.14 (Bankr. S.D.N.Y., Sept. 18, 2009). The Trustee fails to point out this noted disagreement to the Court.

Instead, the Trustee attempts to discredit the post-*Sharp* cases that hold that transferee intent is required under Section 276 by contending that they all ultimately rely on a case that was amended and now "no longer states that mutual fraudulent intent is required." (Opp'n at 21 (discussing *In re Kovler*, 249 B.R. 238 (Bankr. S.D.N.Y. 2000), *amended by* 329 B.R. 17 (Bankr. S.D.N.Y. 2005).) But the Trustee mischaracterizes the corrected *Kovler* decision: the corrected *Kovler* decision *never states* that mutual intent on the part of both parties was not required under Section 276. To the contrary, in discussing Section 276, the corrected decision states that "[w]here the plaintiff establishes actual and *mutual fraudulent intent by both parties*, the transaction is a fraudulent conveyance." *Id.* at 18 (emphasis added). The corrected decision also cites to a Second Circuit case, *U.S. v. McCombs*, 30 F.3d 310 (2d Cir. 1994), for the proposition that "section 276 focused on the 'actual intent' of the transacting *parties*." *Kovler*, 329 B.R. at 19 (citing *McCombs*, 30 F.3d at 327-28) (emphasis added). The Trustee cannot credibly argue that "controlling precedent unequivocally establishes" that transferee intent is not required to state a Section 276 claim. (Opp'n at 21.) The district is, at a minimum, split on the issue.

Further, the courts that require both transferee and transferor intent under Section 276 are correct to impose a higher burden than applies under federal law because Section 276 is more onerous than the federal actual fraudulent conveyance provision. Unlike Section 548(a)(1)(A), which may be used to recover actual fraudulent transfers only two years prior to the liquidation, Section 276 may be used to recover actual fraudulent transfers reaching back as many as six years. Given the enormous power Section 276 gives a trustee to avoid six years of transfers, it is

proper to hold him to a higher standard than under the Bankruptcy Code by requiring him to plead and ultimately prove transferee *and* transferor intent.

Perhaps recognizing that he is required to plead transferee intent under Section 276, the Trustee devotes three pages of his Opposition to trying to show that he has properly alleged Herald Fund's actual fraudulent intent. But those allegations are insufficient. First, the Trustee apparently concedes that he does not allege any direct evidence of actual fraudulent intent by Herald Fund, as he nowhere addresses Herald Fund's argument on this point. Second, any allegations of circumstantial evidence fail because they do not connect Herald Fund to BLMIS or show Herald Fund's particular knowledge of any suspicious activity. To the contrary, the allegation that HSBC (Luxembourg) was the custodian of the Herald Fund Account indicates that it was HSBC (Luxembourg) that maintained any direct connection with BLMIS and that, if anyone "should have known" of BLMIS's fraud, it was HSBC (Luxembourg) as custodian. (SAC ¶¶ 27, 29.) Further, many of the allegations merely point to information potentially available to the public at large but do not allege any particular knowledge on the part of Herald Fund of such information. (SAC ¶¶ 36(g), (h), & (j); Herald Fund Mem. at 15-16.)

The Trustee attempts to overcome his lack of circumstantial evidence by asserting that trustees, as "third party outsiders," have a lower pleading burden because they "must plead fraud on secondhand knowledge." (Opp'n at 24, quotation and citation omitted.) But the Trustee should not be entitled to the benefit of any such presumption. In this instance, it is the Trustee and his various agents and employees that apparently are in possession of the potentially relevant material, including, most importantly, the BLMIS books and records. The Trustee, and not Herald Fund, is thus the most informed player in the game, and no presumption to the contrary should apply. *Cf. Lewis v. McGraw*, 619 F.2d 192, 195 (2d Cir. 1980) (refusing to presume

reliance on a company's material misrepresentation because, "where no reliance was possible under any imaginable set of facts, such a presumption would be illogical in the extreme.").

Accordingly, because the Trustee fails to allege adequately any actual fraudulent intent on the part of Herald Fund, and because such intent is required to state a claim under Section 276, this claim must be dismissed.

## IV.    THE TRUSTEE CANNOT STATE A CLAIM FOR TURNOVER.

It is black letter law that a bankruptcy trustee cannot seek turnover of property pursuant to 11 U.S.C. § 542 without first establishing that "the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate." (Herald Fund Mem. at 17 (quoting *In re Student Fin. Corp.*, 335 B.R. 539, 554 (D. Del. 2005).)  This is the only result consistent with Section 542(a), which permits turnover of property that the trustee can use, sell or lease, because "property that has been fraudulently or preferentially transferred does not become property of the estate until it has been recovered." *See In re Teligent, Inc.*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005); *see also In re CyberCo Holdings, Inc.*, 382 B.R. 118, 144 (Bankr. W.D. Mich. 2008) (Section 542 may not be used as an "alternative theory of recovery" in place of Section 550).

The Trustee sidesteps Herald Fund's arguments and instead argues, through a manipulation of the separate recovery provision in SIPA, that he is entitled to recover funds that have not yet been avoided because he may recover property that is "voidable." (Opp'n at 27-28.) The Trustee's focus on this language is misplaced for three reasons.  First, the Court need not look to SIPA's recovery provision where the clear language of Section 542(a) — the provision under which the Trustee seeks turnover — and binding precedent of this Circuit clearly establish the standard for this particular claim. *See* 11 U.S.C. § 542(a).  Under those authorities, a trustee may only recover via turnover under Section 542 funds that he has shown to be property of the

estate. *See In re Colonial Realty Co.*, 980 F.2d 125, 131 (2d Cir. 1992) (referring to congressional intent that property subject to fraudulent transfer action is not property of estate subject to turnover unless and until trustee succeeds in an avoidance action as to that property).

Second, even were it appropriate to consider SIPA's recovery provision with respect to the Trustee's turnover claim — which it is not — SIPA's use of the word "voidable" in no way diminishes the requirement that the Trustee allege adequately that the transfer at issue is at least capable of being avoided to in turn have stated a claim for turnover. To credit the Trustee's argument would mean that, simply by alleging in a conclusory fashion that property belongs to the estate, such property would be "voidable" and thus subject to turnover. Such an absurd result would hardly serve judicial economy and would turn the applicable Bankruptcy Code provisions on their head. Rather, the Trustee should be required at least to state a claim for avoidance on which to base his turnover claim.

Third, the Trustee has not adequately alleged that the transfers at issue are "voidable," so they are not properly subject to turnover. As demonstrated in Herald Fund's Memorandum and this reply, the Trustee fails to state any avoidance claim. The Trustee's conclusory allegation that the transfers "constitute the property of the estate to be recovered and administered by the Trustee . . . pursuant to 15 U.S.C. § 78fff-2(c)(3)" (SAC ¶ 43) does not save his case, at it does not meet the pleading standard. *See Iqbal*, 129 S.Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[4] Thus, because the Trustee does not adequately allege that the property in question belongs to the estate, he cannot state a claim for turnover and, accordingly, his turnover claim must be dismissed.

---

[4] Further, SIPA's presumption that "property so transferred shall be deemed to have been property of the debtor," 15 U.S.C. § 78fff-2(c)(3), does not apply under the Trustee's own logic. *See supra* Section I.

## V. THE TRUSTEE STATES NO BASIS FOR OBJECTING TO HERALD FUND'S SIPA CLAIM.

The Trustee's argument for why he should be permitted to object to Herald Fund's SIPA claim fails because it also skips over the dispute at the heart of this case — whether he has the power to avoid the subject transfers. The Trustee cannot defeat the settled rule that, before Section 502(d) can be invoked, there must be a "judicial determination that the creditor received a preference (and has failed to repay it)." *See In re Chase & Sanborn Corp.*, 124 B.R. 368, 370 (Bankr. S.D. Fla. 1991). As in his argument on the turnover claim, the Trustee twists the meaning of the word "avoidable" in Section 502(d). Here again, property can only be said to be "avoidable" if the Trustee has at least stated a claim that it belongs to the estate, which he has not done here. The Trustee's argument that "Defendant has not returned [ ] transfers to the Trustee" (Opp'n at 30) is thus irrelevant, as Herald Fund need not return money to the estate unless and until the Court determines that such transfers are void. Accordingly, because the Trustee has not even stated a claim for avoidance of the transfers to Herald Fund, he cannot invoke Section 502(d), and his objection to Herald Fund's SIPA claim should be overruled and dismissed.

In addition, the Trustee fails entirely to address Herald Fund's arguments that he has made only conclusory, insufficient allegations that the "books and records of BLMIS" do not support Herald Fund's claim and that he should not be allowed to rely on those books and records to avoid transfers for the benefit of Herald Fund while at the same time ignoring them when they support Herald Fund's claim. (Opp'n at 29 n.15.). These arguments show that the Trustee provides no adequate basis for objecting to or disallowing Herald Fund's SIPA claim.

## VI. THE TRUSTEE CANNOT RECOVER TAX PAYMENTS MADE TO ANY TAX AUTHORITY ON HERALD FUND'S BEHALF.

The tax payments withheld by BLMIS and paid to government authorities on Herald Fund's behalf cannot be recovered from Herald Fund as a matter of law because they never

constituted property of the estate, but rather, were held in trust for the government tax authorities to which they were paid. (Herald Fund Mem. at 20-21.) Moreover, to the extent that such payments were made by BLMIS in the 90 days prior to the Filing Date, they are not avoidable as preferential transfers because they were not made on account of an antecedent debt owed by BLMIS. (*Id.* at 21-22.) Faced with these arguments, the Trustee now attempts to backpedal and contradict his own pleading by arguing that these payments were not really tax payments at all but rather were fictitious dividends generated from BLMIS's fraudulent scheme such that the law governing avoidance of tax payments does not apply. This argument is wholly improper.

The Trustee cannot now use his Opposition to contradict or supplement the allegations in the Second Amended Complaint; rather, it is the allegations themselves that the Court should assess here. *See, e.g., Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting party's attempt to introduce new allegations in opposition brief to save otherwise insufficient claim); *Jacobson v. Peat, Marwick, Mitchell & Co.*, 445 F. Supp. 518, 526 (S.D.N.Y. 1977) (noting that "a party is not entitled to amend his pleading through statements in his brief."). Thus, the Trustee cannot erase or take back his unambiguous allegations that in the ninety days preceding the Filing Date BLMIS "made *tax payments* to the appropriate tax authorities on behalf of Herald Fund totaling $1,487,933," that in the two years preceding the Filing Date BLMIS "made *tax payments* to the appropriate tax authorities on behalf of Herald Fund totaling $5,823,339," and that in the six years preceding the Filing Date BLMIS "made *tax payments* to the appropriate authorities on behalf of Herald Fund totaling $2,922,574" (SAC at ¶¶ 33, 34, 35 (emphases added)). Nor can he rely on the purported facts described in his Opposition but alleged nowhere in the Second Amended Complaint. (*Compare* Opp'n at 31 *with* SAC.) Thus, under the controlling allegations of the Second Amended Complaint, those moneys withheld by

BLMIS and paid to the government were, in fact, tax payments which, under the clear language of the Code and as established by case law, cannot be avoided here. Given that all of the Trustee's arguments in support of his claim for avoidance of tax payments rely on his new and inappropriate description of them as other than tax payments, none of them apply, and the Court should dismiss the avoidance claims to the extent they seek recovery of tax payments.

## VII. THE TRUSTEE IS NOT ENTITLED TO A CONSTRUCTIVE TRUST OR ASSIGNMENT OF HERALD FUND'S TAX RETURNS.

Finally, the Trustee has overstepped his statutory authority in seeking to impose a constructive trust over the proceeds of the transfers and for an assignment of tax refunds paid to Herald Fund by taxing authorities for amounts paid on "fictitious profits" in connection with its investments with BLMIS. It is beyond question that the Trustee's authority is limited by SIPA, the Code, and the DCL, that none of those statutes allow the Trustee to seek remedies beyond those that they authorize, and that this limitation is in no way affected by the Trustee's uncontroversial citation to Fed. R. Civ. P. 54(c). This limitation standing alone is sufficient for the Court to rule at this stage that the Trustee cannot seek the remedies described above.

Further, although the Trustee contends that a motion to dismiss remedies, as opposed to claims, is improper, courts often dismiss remedies on motions to dismiss when those remedies are unavailable. *See, e.g.*, *Moon v. Webber Oil Co.*, Civ. No. 7-126-B-W, 2008 WL 130361, at *3 (D. Me. Jan. 10, 2008) (recommending dismissal on Rule 12(b)(6) motion of certain unavailable remedies) *aff'd*, 2008 WL 341551 (D.Me., Feb. 5, 2008); *Helprin v. Harcourt, Inc.*, 277 F. Supp. 2d 327, 339-41 (S.D.N.Y. 2003) (on Rule 12(b)(6) motion to dismiss, granting motion to strike punitive damages as unavailable on facts alleged).

Moreover, the Trustee's request for a constructive trust fails because he has not alleged the requisite elements. While the Trustee seeks to muddy the waters by arguing that the

elements of a constructive trust set forth by Herald Fund are mere "guideposts" (Opp'n at 34), the Trustee cannot escape the fact that "a constructive trust depends on the concept of unjust enrichment . . . ." *Snepp v. United States*, 444 U.S. 507, 523 (1980). Here, the Trustee's own allegations contradict the element of unjust enrichment because they clearly state that Herald Fund lost approximately $1 billion with BLMIS.

Nor is the Trustee entitled to recover tax refunds to Herald Fund because such refunds, like the tax payments allegedly paid to applicable tax authorities, never constituted property of the BLMIS estate. *See* 11 U.S.C. § 550(a) (limiting the property the Trustee may seek to only property avoidable under the Code). Thus, because the tax payments to these authorities never constituted property of the estate, any tax refunds paid to Herald Fund from these authorities similarly are not property of the estate and cannot be recovered by the Trustee.

## CONCLUSION

For the reasons set forth above and in Herald Fund's Memorandum, the Trustee's claims should be overruled and dismissed with prejudice in their entirety, and Herald Fund should be awarded its costs and such other relief as is just and proper.


Dated: December 2, 2009                  Respectfully submitted,

                                         /s/ Laura B. Kadetsky
                                         Jay P. Lefkowitz, P.C.
                                         Joseph Serino, Jr.
                                         Laura B. Kadetsky
                                         KIRKLAND & ELLIS LLP
                                         601 Lexington Avenue
                                         New York, New York 10022
                                         (212) 446-4800
                                         jay.lefkowitz@kirkland.com
                                         joseph.serino@kirkland.com
                                         laura.kadetsky@kirkland.com
                                         *Attorneys for Defendant Herald Fund SPC*